UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
NEW HAVEN DIVISION

| | | |
|---|---|---|
| In re: | : | Case No.:  18-31636 (AMN) |
| BRADFORD J. MARTIN, | : | Chapter 7 |
| *Debtor* | : | |
| | : | |
| | : | |
| PAT LABBADIA III, | : | Adv. Pro. No. 19-03001 (AMN) |
| d/b/a LAW OFFICE OF PAT LABBADIA | : | |
| *Plaintiff* | : | |
| v. | : | |
| | : | |
| BRADFORD J. MARTIN AND | : | |
| THOMAS W. HOLTHAUSEN | : | |
| *Defendants* | : | Re: AP-ECF Nos. 6, 31 |
| | : | |

## RULING AND MEMORANDUM OF DECISION AND ORDER
## GRANTING PLAINTIFF'S MOTION TO AMEND COMPLAINT AND
## GRANTING DEFENDANT'S MOTION TO DISMISS COMPLAINT, IN PART

Before the Court is a motion by defendant and debtor Bradford J. Martin ("Martin") to dismiss counts three through twelve of the complaint brought by Pat Labbadia III, dba Law Office of Pat Labbadia ("Labbadia") for failing to state a claim on which relief may be granted, pursuant to Fed.R.Civ.P. 12(b)(6) and Fed.R.Bankr.P. 7012.  AP–ECF No. 6.[1] Also pending before the Court is a motion by Labbadia seeking leave to amend the complaint ("Motion to Amend") and Labbadia's proposed Second Amended Complaint. AP–ECF Nos. 30, 31.

Like many creditors, the plaintiff here is a divorce lawyer whose client filed for bankruptcy without first paying all his attorney's fees.  Specifically, the plaintiff protests that prior to filling the bankruptcy petition, the debtor used money promised to the lawyer

---

[1]    Citations to the docket in Case No. 18-31636 are noted by "ECF No." Citations to the docket in Adversary Proceeding No. 19-03001 are noted by "AP-ECF No."

for payment of attorney's fees to purchase an interest in the real property where he lives and asserted homestead exemption to place it beyond the lawyer's reach. Although he devoted a significant portion of the complaint and the hearing on the Motion to Dismiss to that conversion of non-exempt property to exempt property, the plaintiff did not file an objection to the debtor's exemption claim, even though he had notice of the deadline. After that deadline passed without an objection, the property was "withdrawn from the estate (and hence from the creditors) for the benefit of the debtor." *Owen v. Owen*, 500 U.S. 305, 308 (1991). As exempt property, the real estate cannot be used to satisfy any of the debtor's pre-petition debts, whether or not those debts are dischargeable. *See, Schatz v. Access Grp., Inc. (In re Schatz)*, No. AP 17-00093-MCF, 2019 WL 3432801, at *12 (B.A.P. 1st Cir. July 26, 2019) (exempt home value is unavailable to satisfy pre-petition student loan obligations); *Marine Midland Bank v. Scarpino* (*In re Scarpino)*, 113 F.3d 338, 340 (2d Cir.1997) ("The effect of exemption is to immunize the exempt property from seizure or attachment for satisfaction of debts incurred prior to the bankruptcy proceeding."); *see also* 11 U.S.C. § 522(c); *Law v. Siegel*, 571 U.S. 415, 417-18 (2014).

For the reasons that follow, the Motion to Amend the Complaint is granted, the Motion to Dismiss is granted, in part, and denied, in-part, and the adversary proceeding is dismissed as to Defendant Thomas W. Holthausen.[2]

For the purpose of clarity, the remaining claims following this decision are: (1) an objection to discharge pursuant to § 727(a)(4)(A),[3] (2) an objection to dischargeability

---

[2]    Defendant Holthausen did not file a motion to dismiss and instead responded to Counts 7, 8, 9, 11, and 12 of the complaint. AP-ECF No. 23. Because each count alleged against Holthausen is dismissed as a result of the Motion to Dismiss filed by Martin, Holthausen will be dismissed from this adversary proceeding.

[3]    "Section" refers to sections of Title 11, United States Code.

under §523(a)(2)(A) for damages incurred after an alleged false statement made in or around January 2014, and (3) the determination of Labbadia's claim against Martin pursuant to Counts One, Two, and Three.

I.    JURISDICTION

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(b), and the United States District Court for the District of Connecticut's General Order of Reference dated September 21, 1984.  This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B), (H), (I), and (J), and the bankruptcy court has the power to enter a final judgment in this adversary proceeding, subject to traditional rights of appeal.  This adversary proceeding arises under bankruptcy case number 18-31636 (the "Main Case") pending in this District and venue is proper pursuant to 28 U.S.C. § 1409.

II.    FACTS[4]

In 2011, Martin sought a divorce from his wife and retained Labbadia to represent him in a dissolution of marriage proceeding in Connecticut state court (the "divorce case"). Labbadia and Martin signed a written engagement letter dated on or about July 19, 2011. Labbadia worked on the divorce case through and including May 5, 2014 when judgment entered in the case.

At some point in time prior to trial in the divorce case, Martin owed a "substantial amount" to Labbadia, and Martin "stated that he would make a payment toward the balance of the bill, and that he would pay the account in full when the marital home was

---

[4]    Unless otherwise noted, the facts recited herein are those alleged and incorporated in the Second Amended Complaint, AP-ECF No. 30.  *See, Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

sold." AP-ECF No. 30, p. 8. Labbadia relied on this statement and continued to represent Martin in the divorce case. After the divorce case concluded, Martin hired another attorney to conduct the sale and closing of the martial home. Prior to the sale closing, Attorney Gerald Ryan communicated to Labbadia at 3:40 p.m. on June 13, 2014, by telephone that Martin refused to authorize Attorney Ryan to use funds from the closing to pay the balance owed to Labbadia. Martin and Attorney James Flaherty then thwarted Labbadia's application for a prejudgment remedy in state court when he sought security for his claim.

When Martin did not pay his legal fees, Labbadia commenced a civil action in Connecticut state court. The state court civil action is still pending. Labbadia claims he is owed $63,195.20 in principal and interest as of January 22, 2018. AP-ECF No. 30, p. 4.

At some point during the divorce case, Martin moved into a house (the "Westbrook Property") owned by his long-time friend, Defendant Thomas W. Holthausen (hereinafter "Holthausen") and paid $500.00 per month in rent. Martin resided there with Holthausen throughout the divorce case and up to the filling of the bankruptcy petition.[5] On September 18, 2018, Martin paid Holthausen $60,000 for a twenty-five percent (25%) interest in the Westbrook Property. There is no dispute that this represented the fair market value of the interest purchased. Martin filed his bankruptcy petition thirteen (13) days after purchasing the interest in the Westbrook Property where he had been living. Martin indicated on his bankruptcy petition that he rented his residence, but also disclosed that he owned a twenty-five percent (25%) interest in the Westbrook Property. AP-ECF

---

[5]    According to his Answer, Holthausen spends much of the year in Atlantic City, New Jersey. AP-ECF No. 23, p.2.

4

No. 30, p. 4; ECF No. 1, p. 3, 10.  However, Martin did not list any rental payments on his Schedule J expenses.  ECF No. 1, p. 25.  Martin asserted a state law homestead exemption in the Westbrook Property in the amount of $58,750.00, a motor vehicle exemption in a 2005 Honda Accord, and a $1 exemption in a 2014 Honda Accord.  ECF No. 6, p. 8.  The 2014 Honda Accord was purchased on July 10, 2018, and an automobile loan from Connex Credit Union encumbers the title. The automobile transaction occurred after Martin retained bankruptcy counsel.  AP-ECF No. 30, p. 6.

### III.    MOTION TO AMEND

After filing his initial response to the Motion to Dismiss, Labbadia filed his Second Amended Complaint and a Motion to Amend Complaint.  AP-ECF Nos. 30, 31.  Labbadia states in the Motion to Amend that, "[w]hile the plaintiff feels that the original complaint is sufficient, he has decided to file the amendment and this motion to attempt to correct some clerical errors with respect to citations and to attempt to clarify and enhance some of the allegations with which the moving defendant has taken exception."  AP-ECF No. 31, p. 2.  Holthausen and Martin (collectively "Defendants") opposed the Motion to Amend. AP-ECF No. 37.

The proposed Second Amended Complaint seeks to add allegations that after the conclusion of the divorce case, Martin refused to use proceeds from the sale of his marital house to pay his legal debts to Labbadia.  It also identifies the specific provisions of the bankruptcy code Defendant Martin allegedly violated in Count Four and adds a claim for unjust enrichment among several other changes.

Pursuant to Fed.R.Civ.P. 15(a)(2), made applicable to this adversary proceeding by Fed.R.Bank.P. 7015, a pleading may be amended with the opposing party's written

consent or the court's leave. "Rule 15(a) declares that leave to amend shall be freely given when justice so rewe went quires." *Foman v. Davis*, 371 U.S. 178, 182 (1962). The rule in the Second Circuit is to allow a party to amend its pleadings in the absence of bad faith or prejudice to the non-movant. *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993) (citing *State Teachers Retirement Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir.1981)).

Because the proposed Second Amended Complaint does not prejudice the Defendants, justice is best served by allowing the amendments. Therefore, Labbadia's Motion to Amend the Complaint, AP-ECF No. 31, will be granted.

In his opposition to the Motion to Dismiss, Labbadia asserted that the motion would be more appropriate as one for a more definite statement under Rule 12(e). AP-ECF No. 71, p. 7, 17. However, Labbadia had an opportunity to file a more definite statement in this case and he has done so. Based on the statements made during a hearing on July 31, 2019, the request to file a more definite statement is denied.

IV.   PROCEDURAL HISTORY

Martin commenced the Chapter 7 bankruptcy proceeding in the Main Case on October 1, 2018 (the "Petition Date"). The Meeting of Creditors closed on November 6, 2018, and the period to file objections to exemptions expired on December 6, 2018.[6] *See,* 11 U.S.C. § 522(f). No objections to any of Martin's claimed exemptions were filed. The period for objecting to Martin's bankruptcy discharge pursuant to 11 U.S.C. § 727, or to

---

[6] During the hearing on July 31, 2019, plaintiff repeated an argument made earlier in this case that the deadline to object to the debtor's exemptions was a trap for the unwary and should have been included on the same notice that stated the deadline to object to discharge or dischargeability of a claim. *See*, ECF No. 3. However, the clerk used official form 309(a), providing the plaintiff with all required notice at the commencement of the debtor's Chapter 7 case. In Section 9, "Deadlines," notice was provided of the deadline to object to exemptions. ECF No. 3, p. 2.

dischargeability of a specific claim pursuant to 11 U.S.C. § 523, expired on January 7, 2019. Labbadia attempted to docket an adversary proceeding in the Main Case on January 7 and January 8, 2019. *See,* ECF Nos. 12, 13, 14. The Court issued an order permitting the commencement of an adversary proceeding filed no later than January 9, 2019, so that the technical deficiencies could be cured. ECF No. 15. Thereafter, Labbadia filed a complaint that commenced this adversary proceeding on January 8, 2019. AP-ECF No. 1. Labbadia then filed his First Amended Complaint on January 9, 2019. AP-ECF No. 3. Martin filed a Motion to dismiss counts three through twelve on February 15, 2019. AP-ECF 6. Labbadia failed to file a response by the due date, March 8, 2019.

On March 20, 2019, the Chapter 7 Trustee reported that there are no assets for distribution to unsecured creditors. ECF No. 20.

After Martin provided the notice to self-represented litigants concerning Motions to Dismiss required by the District Court's Local Rule 12(a),[7] the Court issued a scheduling order on March 14, 2019, permitting Labbadia to file a response to the Motion to Dismiss on or before April 12, 2019, which he did. AP-ECF Nos. 14, 26. The Motion to Dismiss has now been fully briefed by the parties. *See,* AP-ECF Nos. 7, 26, 33, 71, 78. On July 31, 2019, a hearing was held on the Motion to Dismiss (the "Hearing") after which the Court took the matter under advisement. *See,* AP-ECF Nos. 79, 80.[8]

---

[7] I note that although proceeding as a *pro se* litigant, Labbadia is not otherwise entitled to the "special solicitude" afforded to *pro se* laypersons because he is an attorney. *Williams v. Foley*, No. 3:15-CV-1324 (MPS), 2016 WL 4497746, at *1 (D. Conn. Aug. 25, 2016), *aff'd* sub nom. *Williams v. Riley*, 698 F. App'x 13 (2d Cir. 2017) (citing *Parent v. New York*, 485 Fed.Appx. 500, 502–03 (2d Cir. 2012)).

[8] During the Hearing, counsel for Defendants agreed the pending Motion to Dismiss would apply to the Second Amended Complaint filed as AP-ECF No. 30.

V.    <u>MOTION TO DISMISS</u>

*Standards of Review*

Federal Rule of Civil Procedure Rule 12(b)(6), made applicable to this adversary proceeding by Fed.R.Bankr.P. 7012(b), allows a party to move to dismiss a cause of action for, "failure to state a claim upon which relief can be granted."   Fed.R.Civ.P. 12(b)(6).   To survive a motion to dismiss, a pleading must contain a, "'short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).   "The function of a motion to dismiss is merely to assess the legal feasibility of a complaint, not to assay the weight of evidence which might be offered in support thereof."  *Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities*, 748 F.2d 774, 779 (2d Cir. 1984) (citation omitted).

When deciding a motion to dismiss, a court must accept the material facts alleged in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and decide whether it is plausible that a plaintiff has a valid claim for relief.  *See, Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Twombly*, 550 U.S. at 555–56; *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996).  However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678; *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986) (noting that on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation.").  That is because to defeat a Rule 12(b)(6) motion, a plaintiff must plead

sufficient factual allegations "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

A court must limit its review to facts and allegations contained in a complaint, documents incorporated into the complaint by reference or attached as exhibits, and matters of which the court may take judicial notice. *See, Blue Tree Hotels, Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir.2004); *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir.1998) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings."). Documents not incorporated in the pleadings will be excluded in deciding a motion to dismiss, pursuant to Rule 12(d). *See, Chambers v. Time Warner, Inc.*, 282 F.3d 147, 154 (2d Cir. 2002); *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 59 (S.D.N.Y. 2010).

When a complaint alleges fraud or mistake, it must also satisfy the heightened pleading requirements of Rule 9(b), made applicable here by Bankruptcy Rule 7009. *See,* Fed.R.Civ.P. 9(b) ("[i]n alleging fraud ... a party must state with particularity the circumstances constituting fraud...."). The Second Circuit has explained that under Rule 9(b) "the complaint must: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir.1993)); *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 51 (2d Cir.1995) (same). "In other words, Rule 9(b) requires that a plaintiff set forth the who, what, when, where and how of

the alleged fraud." *U.S. ex rel. Kester v. Novartis Pharm. Corp.*, 23 F. Supp. 3d 242, 252 (S.D.N.Y. 2014) (citations omitted). Plaintiffs may not allege "fraud by hindsight," but must "allege facts that give rise to a strong inference of fraudulent intent." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128-29 (2d Cir.1994) (citations omitted). A strong inference of fraudulent intent "may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Shields*, 25 F.3d at 1128.

## DISCUSSION

The allegations in the complaint, and their disposition by this decision, are summarized by the following chart:

| Count | Claims | Disposition |
|---|---|---|
| 1 | State law contract claim for $43,134.38 plus interest and costs. | DEFERRED |
| 2 | State law contract claim for $43,134.38 plus interest and costs. | DEFERRED |
| 3 | State law claim based on fraudulent misrepresentation. | DEFERRED |
| 4 | Objections to discharge pursuant to 11 U.S.C. § 727:<br>1. 727(a)(2) – Fraudulent Transfer or Concealment of Property<br>2. 727(a)(3) – Failure to Keep or Preserve Records<br>3. 727(a)(4)(A) – False Oath or Account<br>4. 727(a)(4)(B) – Presentation of a false claim<br>5. 727(a)(4)(C) – Extortion and Bribery<br>6. 727(a)(4)(D) – Withholding Documents and Records<br>7. 727(a)(5) – Failure to Explain Loss or Deficiencies<br>8. 727(a)(6) – Failure to Obey Lawful Order<br>9. 727(d) and/or (e) – Revoke Discharge | DISMISSIED IN PART Section 727(a)(4)(A) claim remains. |
| 5 | Objections to dischargeability pursuant to 11 U.S.C. § 523(a)(2) – Debt created though false pretense, false representation or actual fraud. | DISMISSIED IN PART |
| 6 | Objections to dischargeability pursuant to 11 U.S.C. § 523 523(a)(6) – Debt created though willful or malicious injury. | DISMISSED |
| 7 | State law fraudulent transfer claims. | DISMISSED |
| 8 | State law conversion or civil theft. | DISMISSED |
| 9 | Objections to exemptions pursuant to 11 U.S.C. § 522(o). | DISMISSED |
| 10 | State law breach of the covenant of good faith and fair dealing. | DISMISSED |
| 11 | State law unjust enrichment. | DISMISSED |
| 12 | State law fraudulent transfer claims under Uniform Fraudulent Transfer Act - Conn. Gen. Stat. 52-552. | DISMISSED |

<u>11 U.S.C. § 522(o) – Objection to Exemptions (Count Nine)</u>

Because the main focus of the complaint here is Martin's transformation of non-exempt cash into an exempt homestead interest in real property on the eve of a bankruptcy case, I will start with Count Nine of the Second Amended Complaint.  Count Nine asserts that Martin engaged in "pre-bankruptcy abuse" and "shenanigans," when he purchased the Westbrook Property, and, through the "reconfiguring of his automobiles," in violation of 11 U.S.C. § 522(o).  Under § 522(o), the amount of a state homestead exemption, or the debtor's interest in a residence or burial plot, shall be reduced to the extent that such value is attributable to non-exempt property that the debtor converted into the homestead, residence, or burial plot within ten years of filing for bankruptcy, if the conversion was made "with the intent to hinder, delay, or defraud a creditor."  11 U.S.C. § 522(o).

 "A debtor is permitted to exempt certain types of property from property of the bankruptcy estate, in order to have a chance of a fresh start after bankruptcy."  *In re Seltzer*, 185 B.R. 116, 118 (Bankr. E.D.N.Y. 1995).  If a party in interest believes an exemption claimed by a debtor is improper, they can object to that exemption. Federal Rule of Bankruptcy Procedure 4003(b) provides, in part:

> "A party in interest may file an objection to the list of property claimed as exempt only within 30 days after the meeting of creditors held under §341(a) is concluded or within 30 days after any amendment to the list or supplemental schedules is filed, whichever is later."

"Unless a party in interest objects, the property claimed as exempt on such list is exempt." 11 U.S.C. § 522(l).  "Anything properly exempted passes through bankruptcy; the rest goes to the creditors."  *Matter of Hawk*, 871 F.3d 287, 290 (5th Cir. 2017) (quoting *Payne v. Wood*, 775 F.2d 202, 204 (7th Cir. 1985)).  Count Nine seeks to object to exemptions

claimed by Martin in the Westbrook Property and his motor vehicles.  As noted earlier in footnote 6, the plaintiff here had notice of the objection deadline.  ECF No. 3, p. 2.

The objection deadlines are real.  In *Taylor v. Freeland & Kronz*, the Supreme Court held that a party in interest in a Chapter 7 case cannot, "contest the validity of an exemption after the 30-day period," even if "the debtor had no colorable basis for claiming the exemption."  *Taylor v. Freeland & Kronz*, 503 U.S. 638, 639, 643–44 (1992).  The Supreme Court commented on the finality of this rule, stating that "[d]eadlines may lead to unwelcome results, but they prompt parties to act and they produce finality."  *Taylor*, 503 U.S. at 644; *see also Law v. Siegel*, 571 U.S. 415 (2014) ("[A] trustee's failure to make a timely objection prevents him from challenging an exemption."); *In re Bell*, 225 F.3d 203, 209 (2d Cir. 2000) ("The Bankruptcy Rules expressly limit a bankruptcy court from extending the time period for objections, except as provided in Rule 4003(b) itself.").

Turning first to Labbadia's objection regarding Martin's motor vehicles, I conclude as a matter of law that a motor vehicle is not subject to the provisions of § 522(o) when it is not used as a residence, burial plot, or claimed as a homestead.  *See,* 11 U.S.C. § 522(o); *cf. In re Tullar*, 434 B.R. 69, 70 (Bankr. W.D.N.Y. 2010) (long-haul trucker living in sleeper cab of his Peterbilt truck entitled to New York homestead exemption); *In re Irwin*, 293 B.R. 28 (Bankr. D. Ariz. 2003) (debtors entitled to Arizona homestead exemption in self-propelled motor home).  The Second Amended Complaint does not allege that Martin is claiming his automobiles as a residence, burial plot, or a homestead.[9]

---

[9]    According to his Schedules, the exemption Martin claims in the 2005 Honda Accord is pursuant to the Connecticut motor vehicle exemption, not the homestead exemption.  *Compare* Conn.Gen.Stat. § 52-352b(t) (homestead) *with* Conn.Gen.Stat. § 52-352b(j) (motor vehicles).  Martin likewise does not claim a homestead exemption in the 2014 Honda Accord, but rather a $1.00 exemption under Conn.Gen.Stat. § 52-352b(r) (exempting "[a]ny interest of the exemptioner in any property not to exceed in value one thousand dollars").

The complaint and subsequent motions are devoid of any facts or analysis to find that "the reconfiguring of [Martin's] automobiles," could be a violation of § 522(o) and to that extent is dismissed.

Turning next to the Westbrook Property, although the core of Labbadia's complaint is that Martin should not be permitted to transform non-exempt property into exempt property on the eve of bankruptcy, his time to make such an argument has passed. Labbadia did not file an objection to Martin's claimed exemptions.  Instead he filed this adversary proceeding after the exemption objection deadline.   Although the Second Circuit has not addressed the issue, some courts permit trustees or creditors to object to exemptions by way of an adversary proceedings.  *See, In re Lee*, 889 F.3d 639 (9th Cir. 2018); *In re Grosslight*, 757 F.2d 773, 777 (6th Cir. 1985); *cf.  In re Peterson*, 920 F.2d 1389 (8th Cir. 1990) (adversary proceeding to nullify transfer as fraudulent conveyance failed to indicate that trustee objected to claimed homestead exemption).  However, in such cases the adversary proceeding must still be filed prior to the objection deadline to be considered timely.  *See, e.g., Lee*, 889 F.3d at 645 (adversary complaint met Rule 4003's procedural requirements and was timely filed); *In re Harper*, 132 B.R. 349, 357 (Bankr. S.D.Ohio 1991) (trustee's adversary proceeding to prohibit debtor from exempting interest in property untimely); *In re Traurig*, 34 B.R. 325 (Bankr. S.D.Fla. 1983) (trustee's adversary proceeding objecting to debtor's claim of exemption was untimely).   Here, the Court need not address whether a timely creditor may object to a claimed exemption in an adversary proceeding, because Labbadia filed the adversary proceeding after the objection deadline.

The deadline to file objections to Martin's claimed exemptions expired on December 6, 2018, and Labbadia had notice of the deadline but did not file his complaint with these objections until January 8, 2019. To the extent Labbadia's § 522(o) cause of action *could* serve as an objection to Martin's claimed exemption,[10] it was not filed prior to the objection deadline and is therefore untimely. When no objections were filed regarding Martin's claimed exemptions to the Westbrook Property and the Honda Accords, the property was "withdrawn from the estate (and hence from the creditors) for the benefit of the debtor." *Owen v. Owen*, 500 U.S. 305, 308 (1991). Therefore, Count Nine must be dismissed with prejudice.[11] To the extent Count Nine is also alleged against Defendant Holthausen, it is dismissed because Holthausen is not a debtor asserting an exemption.

## Objections to Discharge - Section 727 (Count Four)

Count Four alleges a laundry list of conclusory reasons that Martin should be denied a discharge. Because, "§ 727 imposes an extreme penalty for wrongdoing[,]" the Second Circuit instructs, "that [§ 727] must be construed strictly against those who object to the debtor's discharge and 'liberally in favor of the bankrupt.'" *State Bank of India v. Chalasani (In re Chalasani)*, 92 F.3d 1300, 1310 (2d Cir. 1996); *see also In re Leone*, 463 B.R. 229, 248 (Bankr. N.D.N.Y. 2011) (denying a debtor's discharge "is the death penalty of bankruptcy"). Here, Count Four simply identifies the various statutory subsections and

---

[10]    The Ninth Circuit noted that while the adversary proceeding satisfied the Rule 4003 requirements and provided the debtor adequate notice, "including an express objection to the claimed exemptions in his complaint or other filing would have been a better practice." *In re Lee*, 889 F.3d at 645.

[11]    Because the Court denied Labbadia's request to file a more definite statement, all counts and claims that are dismissed are dismissed with prejudice.

asserts that Martin's conduct violated each subsection and he should be denied a discharge.  The Court will address the nine referenced subsections separately.[12]

### 1. Section 727(a)(2) – Fraudulent Transfer or Concealment of Property

Pursuant to § 727(a)(2)(A)–(B), a court shall not grant a discharge if "the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, ... (A) property of the debtor, within one year before the date of the filing of the petition; or (B) property of the estate, after the date of the filing of the petition."  11 U.S.C. § 727(a)(2)(A)-(B).  Labbadia has not alleged any post-petition acts, and, therefore, the § 727(a)(2)(B) action must be dismissed with prejudice.

The Court is limited to looking at prepetition transfers or concealments that occurred within one year prior to the bankruptcy petition.[13]  11 U.S.C. § 727(a)(2)(A).

Labbadia does not state in his Second Amended Complaint which specific transfer of property he relies on when he references § 727(a)(2).  Earlier in the complaint, Labbadia alleges that, "Martin failed to disclose to the Trustee at the Creditor's Meeting that he had paid for more than one year of college for his adult daughter and he failed to disclose that he had paid rent, living expenses and substantial credit card debt in excess of $70,000 the majority of which his daughter had incurred while at college."  AP-ECF 30, p. 6.  However, the Second Amended Complaint does not allege that any of these prepetition payments occurred within one year before the Petition Date.  Additionally, at

---

[12]  The Court does not find it necessary at this time to address that the rules of pleading require separate causes of action to be listed as sperate counts.  *See,* Fed.R.Civ.P. 10(b).

[13]   The Second Amended Complaint makes no argument that a continuing concealment occurred into the one-year look-back period.  *See, In re Ogalin*, 303 B.R. 552, 557 (Bankr. D. Conn. 2004); *see also In re Boyer*, 328 F. App'x 711, 715 (2d Cir. 2009) (assuming *arguendo* that a continuing concealment doctrine exists under § 727) (summary order).

the hearing on the Motion to Dismiss, Labbadia was unable to identify when the alleged transfers were made. AP-ECF No. 80, 00:23:30.[14]  Therefore, even if taken as true, these allegations are insufficient to deny a discharge. Further, § 727(a)(2)(A) is subject to the Rule 9(b) particularity requirements. *In re Demas*, 150 B.R. 323, 328 (Bankr. S.D.N.Y. 1993). Although Labbadia articulates assets allegedly transferred, he has critically failed to allege *when* such acts occurred, which is a necessary element for this claim.

At the Hearing, Labbadia also asserted that Martin's act of trading in his car[15] for the 2014 Honda Accord constituted a "transfer" that violated § 727(a)(2)(A). AP-ECF No. 80, 00:26:20. He also reiterated his objection to the purchase of the interest in the Westbrook Property. AP-ECF No. 80, 00:33:30. However, as addressed above, when no party objected to any of the exemptions, the two Honda Accords and the Westbrook Property were removed from the bankruptcy estate for the benefit of the debtor. *Owen*, 500 U.S. at, 308.

Because there are insufficient particular facts in the complaint to assert a violation of § 727(a)(2)(A), the action must be dismissed with prejudice.

<u>2. Section 727(a)(3) – Failure to Keep or Preserve Records</u>

Pursuant to § 727(a)(3), a court shall deny a discharge when, "the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or

---

[14]     Audio recordings of hearings held before the bankruptcy court are published to the docket of each case with an MP3 file as an attachment. The audio file is referenced using this format: HOURS:MINUTES:SECONDS.

[15]     The make, model, year, and value of this alleged trade-in car was never identified, which is a separate reason the claim must be dismissed.

failure to act was justified under all of the circumstances of the case." 11 U.S.C. §
727(a)(3). However, the Second Amended Complaint is devoid of allegations that any of
the conduct prohibited by § 727(a)(3) occurred.[16] Labbadia further admitted that he did
not request any documents from Martin prior to filing the complaint that could rise to a
violation of § 727(a)(3). *See,* AP-ECF No. 80, 00:49:10. When asked for a basis to make
this allegation during the Hearing, Labbadia responded that he needed to take the
Defendants' deposition first. *See,* AP-ECF No. 80, 00:46:35. Because the complaint fails
to state with particularity facts describing a violation of § 727(a)(3) – with nothing alleged
beyond the language of the statute – the action must be dismissed with prejudice.

### 3. Section 727(a)(4)(A) – False Oath or Account

Section 727(a)(4)(A) provides that a discharge will not be granted if, "the debtor
knowingly and fraudulently, or in connection with the case ... made a false oath or
account." 11 U.S.C. § 727(a)(4)(A). To deny a debtor a discharge under § 727(a)(4)(A),
the party objecting to a discharge must prove that: "1) the debtor made a statement under
oath; 2) the statement was false; 3) the debtor knew the statement was false; 4) the debtor
made the statement with fraudulent intent; and 5) the statement related materially to the
bankruptcy case." *In re Boyer*, 328 F. App'x 711, 715 (2d Cir. 2009) (Summary Order).
Testimony at a § 341 meeting, as well as the debtor's bankruptcy petition, schedules and
related statements, all qualify as statements under oath for purposes of § 727(a)(4)(A).

---

[16]     To the contrary, the Chapter 7 Trustee was satisfied with the documentation provided by Martin
and filed a report of no distribution on March 20, 2019. ECF No. 20. *See, Berger & Assocs. Attys., P.C. v.
Kran (In re Kran)*, 760 F.3d 206, 210–11 (2d Cir. 2014) (considering the filing of a Chapter 7 Trustee's report
as evidence that the debtor provided sufficient documentation from which a creditor could ascertain the
debtor's financial condition); *O'Hearn v. Gormally (In re Gormally)*, 550 B.R. 27, 51 fn.20 (Bankr. S.D.N.Y.
2016) (same); *Cottini v. Blanchard (In re Blanchard)*, 516 B.R. 11, 18 (Bankr. N.D.N.Y. 2014) (same).

*See, In re Levi*, 581 B.R. 733, 746 (Bankr. S.D.N.Y. 2017); *In re Gonzalez*, 553 B.R. 467, 473–74 (Bankr.E.D.N.Y.2016).

Here, Labbadia asserts that Martin made a false oath when he stated on his bankruptcy petition that he paid $500 in rent.  AP-ECF 30, p. 4.  Labbadia also alleges that at the § 341 meeting Martin gave the Chapter 7 Trustee the false impression that he had just moved into the Westbrook Property, when he had in fact been living there for several years.  AP-ECF 30, p. 4.  Reading the Second Amended Complaint in the light most favorable to the Plaintiff, these allegations narrowly meet the pleading requirements to allege a violation of 11 U.S.C. § 727(a)(4)(A).

Therefore, the Motion to Dismiss the § 727(a)(4)(A) action is DENIED.

### 4. Section 727(a)(4)(B) – Presentation of a false claim

Pursuant to § 727(a)(4)(B), a debtor cannot receive a discharge if, "the debtor knowingly and fraudulently, or in connection with the case […] presented or used a false claim."  11 U.S.C. § 727(a)(4)(B).  Section 727(a)(4)(B) encompasses bankruptcy "claims" as defined in 11 U.S.C. § 101(5) and "does not mean 'representation' or 'statement' but 'right to payment.'"  *In re Gorchev*, 275 B.R. 154, 164 (Bankr. D. Mass. 2002); *see also In re Henderson*, 423 B.R. 598, 619 (Bankr. N.D.N.Y. 2010).  No proofs of claim were filed in the Debtor's bankruptcy case, which is typical in no-asset Chapter 7 cases, like the Main Case here.

Labbadia fails to elaborate on this contention in the Second Amended Complaint or in any subsequent pleadings.  To the extent that Labbadia contends that Martin's false "claim" is his claim of an ownership interest in the Westbrook Property or the Honda Accords, the Court "notes that a claim of ownership, even if false, is not a "claim" for

purposes of § 727(a)(4)(B)." *In re Jackson*, 548 B.R. 353, 385 (Bankr. N.D. Ga. 2016). Therefore, the § 727(a)(4)(B) action must be dismissed with prejudice.

    5. Section 727(a)(4)(C) – Extortion and Bribery

    Pursuant to § 727(a)(4)(C), a court shall not grant a discharge where the debtor, "knowingly and fraudulently, in or in connection with the case, gave, offered, received, or attempted to obtain money, property, or advantage (or a promise thereof) for acting or forbearing to act."  11 U.S.C. § 727(a)(4)(C).  "Most of the cases addressing § 727(a)(4)(C) cite *Collier on Bankruptcy* which concludes that the section is meant to address any attempted or actual extortion or bribery in connection with a bankruptcy case." *In re Stewart*, 577 B.R. 581, 585 (Bankr. W.D. Okla. 2017) (collecting cases); *see* 6 Collier on Bankruptcy 727.06 (16th 2019); *see also In re Chipwich, Inc.*, 64 B.R. 670, 678 (Bankr. S.D.N.Y. 1986) (Section 727(a)(4)(C) tracks the language of the criminal code relating to the bankruptcy crimes of bribery or extortion) (citing 18 U.S.C. § 152). The Second Amended Complaint does not even hint at allegations of bribery or extortion and provides none of the particularity required by Rule 9(b).  *See, In re Stewart*, 577 B.R. at 585 (Section 727(a)(4)(C) sounds in fraud requiring particularity under Rule 9(b)). Therefore, the § 727(a)(4)(C) action must be dismissed with prejudice.

    6. Section 727(a)(4)(D) – Withholding Documents and Records

    Pursuant to § 727(a)(4)(D), a court shall not grant a discharge where the debtor, "withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records and papers, relating to the Debtor's property or financial affairs."  11 U.S.C. § 727(a)(4)(D).  "Courts have interpreted this provision as imposing an affirmative duty on the [d]ebtor to cooperate with the trustee 'by

providing all requested documents to the trustee for [her] review, and failure to do so constitutes grounds for denial of discharge.'" *Pereira v. Gardner (In re Gardner)*, 384 B.R. 654, 668 (Bankr.S.D.N.Y.2008). Here, the Second Amended Complaint does not identify any documents or records that Martin failed to disclose to the Chapter 7 trustee.[17] As noted earlier, the Chapter 7 Trustee filed a report of no distribution implying all requested documents were provided. ECF No. 20. Therefore, the § 727(a)(4)(D) action must be dismissed with prejudice.

### 7. Section 727(a)(5) – Failure to Explain Loss or Deficiencies

Section 727(a)(5) states that, a "court shall grant the debtor a discharge, unless ... the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities." 11 U.S.C. § 727(a)(5). The Second Circuit explains that, "[i]n order to obtain a denial of discharge under § 727(a)(5), first, the creditor must establish a loss or deficiency of assets." *D.A.N. Joint Venture v. Cacioli (In re Cacioli)*, 463 F.3d 229, 238 (2d Cir. 2006). Additionally, "a plaintiff cannot merely allege a general lack of assets and must show the disappearance of specific assets previously in the possession of the debtor." *In re Ijbara*, No. 14–01078 (TBA), 2015 Bankr. LEXIS 1251, at *16, 2015 WL 1636944 (Bankr. D.N.J. Apr. 10, 2015) (citing *In re Colodner*, 147 B.R. 90, 94 (Bankr. S.D.N.Y. 1992) (granting a motion to dismiss where "[t]he complaint fail[ed] to specify any assets belonging to the debtor which were either lost or which were diminished and for which the debtor has failed to give a satisfactory explanation")).

---

[17]    The Second Amended Complaint does note that Martin did not disclose a counterclaim filed in the state court civil case as an asset at the 341 meeting, but goes on to say that Martin stated he was not seeking affirmative relief or payment through the counterclaim. AP-ECF 30, p. 3.

The Second Amended Complaint does not identify specific assets which Martin previously owned but are not available for creditors. At the Hearing, Labbadia alleged that the conversion of non-exempt assets to exempt assets violated § 727(a)(5). AP-ECF No. 80, 00:57:10. However, this does not fit within a § 727(a)(5) claim. I further note, "[a] cause of action advanced under § 727(a)(5) is not a substitute for one based upon alleged pre-petition fraud, conversion." *In re Coppaken*, 572 B.R. 284, 325 (Bankr. D. Kan. 2017) (citation omitted). Therefore, the § 727(a)(5) claim is dismissed with prejudice.

### 8. Section 727(a)(6) – Failure to Obey Lawful Order

Section 727(a)(6)(A) provides that, a "court shall grant the debtor a discharge, unless ... the debtor has refused, in the case ... to obey any lawful order of the court, other than an order to respond to a material question or to testify." 11 U.S.C. § 727(a)(6)(A). The Second Amended Complaint does not specify a single order of any court Martin allegedly failed to obey. *See, Casse v. Key Bank Nat'l Ass'n (In re Casse)*, 198 F.3d 327, 333 (2d Cir. 1999) ("The bankruptcy court [is] in the best position to interpret its own orders.") (quotations omitted). Therefore, the § 727(a)(6)(A) action is dismissed with prejudice.

### 9. Section 727(d) and/or (e) – Revoke Discharge

Section 727(d)-(e) provide procedures for the revocation of a discharge, "within one year after such discharge is granted" or "one year after the case is closed." 11 U.S.C. § 727(d)-(e); *see also In re Fickling*, 361 F.3d 172, 177 (2d Cir. 2004). Here, Martin has not received a discharge and the court lacks subject matter jurisdiction to entertain a request to revoke a non-existent discharge. *See* Fed.R.Bankr.P. 7012(h)(3) ("If the court

determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). Therefore, the § 727(d)-(e) action is dismissed with prejudice.

For all the above stated reasons, the Motion to Dismiss Count Four is GRANTED in part, and DENIED, in part. Specifically, the Motion to Dismiss is denied regarding the § 727(a)(4)(A) allegation. Additionally, at this time the Court declines to order the Chapter 7 Trustee to examine the acts and conduct of Martin as requested by Labbadia pursuant to § 727(c)(2).

### Dischargeability under 11 U.S.C. § 523(a)(2)(A) (Count Five)

Count Five alleges that Martin's debt to Labbadia was created though false pretense, false representation, or actual fraud and is non-dischargeable under 11 U.S.C. § 523(a)(2)(A). For a debt to be non-dischargeable under § 523(a)(2)(A), Labbadia bears the burden of alleging "facts that give rise to a strong inference of fraudulent intent." *In re Vanarthos*, 440 B.R. 67, 73 (Bankr. S.D.N.Y. 2010) (citing *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 52 (2d Cir. 1995)). Further, Rule 9(b) applies to claims under § 523(a)(2)(A) for a declaration of non-dischargeability. *See, In re Vanarthos*, 440 B.R. 67, 72 (Bankr. S.D.N.Y. 2010); *H.J. Bushka Lumber & Millwork v. Boucher (In re Boucher)*, 336 B.R. 27, 36 (Bankr. D. Conn. 2005); *see also, In re 21st Century Holdings, Inc.*, 591 B.R. 134, 141 (Bankr. S.D.N.Y. 2018) (collecting cases).

Section 523(a)(2)(A) excepts from discharge those debts arising from "false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A). Though the elements of each overlap, they are distinct. *Heritage Equities, LLC v. Newman (In re Newman)*, 588 B.R. 281, 296 (Bankr. D. Conn. 2018); *Wang v. Guo (In re Guo)*, 548 B.R. 396, 401 (Bankr. E.D.N.Y. 2016).

To establish a debt was incurred by "false pretenses" requires a plaintiff to establish " '(1) an implied misrepresentation or conduct by the defendant[ ]; (2) promoted knowingly and willingly by the defendant[ ]; (3) creating a contrived and misleading understanding of the transaction on the part of the plaintiff[ ]; (4) which wrongfully induced the plaintiff[ ] to advance money, property, or credit to the defendant.' " *Wang*, 548 B.R. at 401 (quoting *Voyatzoglou v. Hambley (In re Hambley)*, 329 B.R. 382, 396 (Bankr. E.D.N.Y 2005)).    A false pretense is "an implied misrepresentation or conduct intended to create a false impression." *In re Hambley*, 329 B.R. at 396; *In re Chase*, 372 B.R. 125, 128 (Bankr. S.D.N.Y. 2007) ("causes of action for 'false pretenses' and 'false representations' under § 523(a)(2)(A) are two distinct actions; the former involves implied misrepresentations, while the latter deals with expressed, either oral or written, misrepresentations") (citation omitted).

To establish a debt was incurred by a "false representation" requires that a plaintiff establish "(1) the defendant made a false or misleading statement; (2) with intent to deceive; (3) in order for the plaintiff to turn over money or property to the defendant." *Wang*, 548 B.R. at 401 (quoting *Frishberg v. Janac (In re Janac)*, 407 B.R. 540, 552 (Bankr. S.D.N.Y 2009)).

Section 523(a)(2)(A)'s use of the term "actual fraud," refers generally to common law fraud. *Husky Int'l Elecs., Inc. v. Ritz*, 578 U.S. ___, 136 S.Ct. 1581, 1586 (2016). "Although 'fraud' connotes deception or trickery generally, the term is difficult to define more precisely." *Husky Int'l*, 136 S.Ct. at 1586.    To establish a debt was incurred by "actual fraud" within the Second Circuit, a plaintiff must establish that "false

representation, scienter, reliance, and harm" occurred. *Evans v. Ottimo*, 469 F.3d 278, 283 (2d Cir. 2006).

While the three separate types of fraud contain somewhat different meanings, the Supreme Court "has historically construed the terms in § 523(a)(2)(A) to contain the 'elements that the common law has defined them to include.' " *Husky Int'l*, 136 S.Ct. at 1586 (quoting *Field v. Mans*, 516 U.S. 59, 69 (1995)). Fraud requires damages that were proximately caused by the false representation. *See, In re Janac*, 407 B.R. 540, 546 (Bankr. S.D.N.Y. 2009). "Proximate cause is something more than speculation as to what the creditor might have done in hypothetical circumstances ... Without a direct link between the alleged fraud and the creation of the debt, there is no proximate cause and the element is not satisfied." *Janac*, 407 B.R. at 547 (quoting *Helin v. Suit (In re Suit)*, No. 08-31908, 2009 WL 943536 (Bankr. E.D. Tenn. Apr. 6, 2009)). Section 523(a)(2)(A) explicitly limits "nondischargeable debts to the loss suffered as the proximate result of the misrepresentation." *Fellows, Read & Assocs., Inc. v. Rieder*, 116 F.3d 465 (2d Cir. 1997) (unpublished) (citing *American Express Travel Related Servs. Co. v. Hashemi (In re Hashemi)*, 104 F.3d 1122, 1125 (9th Cir.1997)).

Count Five is comprised of two paragraphs. The first incorporates by reference the preceding 54 paragraphs. The second states that the "debt owed from the defendant Martin to the plaintiff Labbadia was created through false pretenses, false representation or actual fraud by the debtor, and is therefore non-dischargeable pursuant to the terms of 11 U.S.C. Section 523(a)(2)." AP-ECF No. 30, p. 12. After examining the preceding 54 paragraphs of the Second Amended Complaint, the Court is uncertain as to the precise basis for the § 523(a)(2)(A) claim. However, in Count Three, the Second Amended

Complaint states, "[p]rior to trial, there was a substantial amount [of attorney's fees due] and Martin stated that he would make a payment toward the balance of the bill, and that he would pay the account in full when the marital home was sold."  AP-ECF No. 30, p. 8. The complaint also alleges that: (1) Martin made a false statement, (2) he knew it was false, (3) it was made to induce Labbadia to continue working on the divorce case, and (5) as a result Labbadia suffered damages.  AP-ECF No. 30, p. 8-9.

At the Hearing, Labbadia clarified that the alleged false statement was made in January 2014, and that significant attorney's fees incurred in reliance on the false statement.  AP-ECF No. 80, 01:06:40.   However, the Second Amended Complaint fails to identify the damages that resulted from the alleged false statement, only alleging the total amount of attorney's fees Labbadia claims Martin owes.   As the Second Circuit stated, "only the services obtained from [defendant] based on the misrepresentation are nondischargeable."  *Rieder*, 116 F.3d 465 (2d Cir. 1997).  There is an "inherent sequential order of the elements of fraud. …the misrepresentation must come first, the reliance second and the damage last."  *In re Rieder*, 178 B.R. 373, 380 (Bankr. S.D.N.Y. 1995), *aff'd*, sub nom., 194 B.R. 734 (S.D.N.Y. 1996), *aff'd*, 116 F.3d 465 (2d Cir. 1997).  Here, the "substantial amount" of attorney's fees that Martin owed Labbadia prior to trial in the divorce case could not have been obtained as a result of a false statement made after the amount became due.  *See, Rieder*, 116 F.3d 465 (2d Cir. 1997).  On the other hand, any attorney's fees incurred after the alleged false statement could have been the result of the alleged statement.  With regards to these damages, the complaint is plausible on its face.

For all of the foregoing reasons, the Motion to Dismiss Count Five is GRANTED, with respect to damages before the alleged false statement, and DENIED with respect to damages after the alleged false statement.

Dischargeability under 11 U.S.C. § 523(a)(6) (Count Six)

Count Six asserts that "[a]ll or a portion of the debt owed from the defendant Martin to the plaintiff Labbadia is the result of willful and malicious injury by the debtor, and is therefore nondischargeable pursuant to the terms of 11 U.S.C. Section 523(a)(6)."  AP-ECF 30, p. 12.  The Supreme Court, in *Kawaauhau v. Geiger*, held a nondischargeable debt under § 523(a)(6) requires "a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury."  523 U.S. 57, 61 (1998). This refers to intentional torts and excludes negligent or reckless behavior.  *Kawaauhau*, 523 U.S. at 61-62.  The Supreme Court further held that exceptions to discharge under § 523(a)(6) should not be construed so broadly that even a "knowing breach of contract could ... qualify." *Kawaauhau*, 523 U.S. at 62; *see also* 4 Collier on Bankruptcy 523.12 (16th 2019) ("Courts must be careful not to equate a breach of a contract […] with conduct causing willful and malicious injury.").

"The terms 'willful' and 'malicious' are separate elements, and both elements must be satisfied" by a preponderance of the evidence. *Rupert v. Krautheimer (In re Krautheimer)*, 241 B.R. 330, 340 (Bankr.S.D.N.Y.1999).  The Second Circuit has held that the word "willful" in this context means, "a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury."  *Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir.2006).  "Malicious" in this context means, "wrongful and without just cause or excuse," even in the absence of personal hatred, spite, or ill will. *Ball*, 451 F.3d at 70.  A

26

plaintiff can prove actual malice by circumstantial evidence of the facts and circumstances surrounding the debtor's conduct. *Navistar Financial Corp. v. Stelluti (In re Stelluti)*, 94 F.3d 84 (2d Cir.1996). "Actual malice may be inferred or imputed from the fact that the debtor's conduct, giving rise to liability, has no potential for economic gain or other benefit to the debtor, from which one could only conclude that the Debtor's motivation must have been to inflict harm upon the creditor." *In re Luppino*, 221 B.R. 693, 700 (Bankr. S.D.N.Y. 1998) (holding that commercial bribery and breach of fiduciary duty lacked requisite malice).

However, in cases where a debtor seeks profit or some other benefit, "the underlying conduct, however deplorable, would not give rise to liability under § 523(a)(6) in the absence of some additional, aggravating conduct on the part of the debtor of sufficient gravity to warrant an inference of actual malice." *Luppino*, 221 B.R. at 700 (citing *Stelluti*, 94 F.3d 84). "Accordingly, a knowing breach of contract generally does not satisfy the malicious element of § 523(a)(6) absent 'some aggravating circumstance evidencing conduct so reprehensible as to warrant denial of the 'fresh start' to which the 'honest but unfortunate' debtor would normally be entitled under the Bankruptcy Code.'" *In re Khafaga*, 419 B.R. 539, 550 (Bankr. E.D.N.Y. 2009) (quoting *Luppino*, 221 B.R. at 700).

Here, Labbadia has failed to meet his *Twombly/Iqbal* burden with respect to §523(a)(6). The Second Amended Complaint provides no allegation that Martin's conduct was malicious and does not plead any facts that could demonstrate the requisite "aggravating circumstances." The complaint is centered on Martin's alleged pre-petition bankruptcy planning and a fraudulent breach of contract for failing to pay his legal fees to

Labbadia.  *Cf. Knappenberger v. Knight (In re Knight)*, No. OR-10-1371-JuClPa, 2011 WL 6934480, at *1, 2011 Bankr. LEXIS 4837 (B.A.P. 9th Cir. Nov. 7, 2011) (state court judgment for unpaid attorney's fees failed to meet elements for a willful and malicious injury under § 523(a)(6)).  Courts in the Second Circuit regularly find that routine breach of contract matters are not ones for "willful and malicious injury," within the meaning of § 523(a)(6).  *See, e.g., In re Marcella*, 463 B.R. 212, 220 (Bankr. D. Conn. 2011) ("mere failure to pay an obligation cannot be a willful and malicious injury in and of itself"); *In re Hoyt*, 326 B.R. 13, 20 (Bankr. W.D.N.Y. 2005) ("ordinary breach of contract, nonpayment cause of action cannot constitute a willful and malicious injury cause of action under Section 523(a)(6)").

Therefore, based on the limited allegations in the Second Amended Complaint, Count Six is dismissed with prejudice.

### State Law Fraudulent Conveyance (Counts Seven & Twelve)

Counts Seven and Twelve assert fraudulent transfer claims under common law and Connecticut's Uniform Fraudulent Transfer Act (UFTA).  *See,* Conn.Gen.Stat. § 52-552.  The Bankruptcy Code provides a Chapter 7 trustee with various tools to avoid pre-bankruptcy transfers that were objectively (or constructively) fraudulent or subjectively fraudulent in order to recover transferred assets and distribute them amongst the unsecured creditors.  *See,* 11 U.S.C. §§ 544; 548; 550.  Section 544 permits the trustee to avoid certain transfers by a debtor under state law and recover the proceeds for the benefit of the debtor's estate. 11 U.S.C. §§ 544(b)(1); 550.  Section 544(b) of the Bankruptcy Code is the only basis to assert a fraudulent conveyance claim under a state UFTA.  *See, In re Tronox Inc.*, 429 B.R. 73, 103 (Bankr. S.D.N.Y. 2010).  Other than the

fact that Connecticut law affords the Trustee a four-year reach back period, as opposed to a shorter period under § 548, "[t]he standards of conduct for transfer avoidance under Connecticut law are not materially different than those under § 548." *In re Carrozzella & Richardson*, 302 B.R. 415, 419 (Bankr. D. Conn. 2003); *see also In re Anderson*, No. 15-30458 (AMN), 2018 WL 3197746, at *3, 2018 Bankr. LEXIS 1928 (Bankr. D. Conn. June 26, 2018).

In a Chapter 7 bankruptcy case, only the trustee is authorized to bring an action to avoid an allegedly fraudulent transfer. *See, e.g.* 11 U.S.C. §§ 548(a), 549(a); *In re Boyer*, 372 B.R. 102, 105 (D.Conn.2007), *aff'd*, 328 Fed. Appx. 711 (2d Cir.2009). Although not expressly authorized by the Bankruptcy Code, the Second Circuit has developed a limited exception to this general rule in the form of derivative standing. *See, In re Housecraft Indus. USA, Inc.*, 310 F.3d 64 (2d Cir. 2002) (adopting derivative standing in a Chapter 7 context); *In re Milazzo*, 450 B.R. 363, 370 (Bankr. D. Conn. 2011); *see also Hyundai Translead, Inc. v. Jackson Truck & Trailer Repair, Inc. (In re Trailer Source, Inc.)*, 555 F.3d 231, 243–44 (6th Cir. 2009) (permitting derivative standing in a Chapter 7 case). *But see SunTrust Bank v. Matson (In re CHN Constr., LLC)*, 531 B.R. 126, 133 (Bankr. E.D. Va. 2015) (derivative standing is not appropriate in Chapter 7 cases); *Reed v. Cooper (In re Cooper)*, 405 B.R. 801 (Bankr. N.D. Tex. 2009) (same); *Nangle v. Lauer (In re Lauer)*, 98 F.3d 378, 388 (8th Cir. 1996) (holding that individual creditors of a bankruptcy estate do not have standing to assert claims of voidable transfers).

The Second Circuit has issued a series of opinions outlining the specific circumstances in which a bankruptcy court may authorize a creditors' committee, or a particular creditor, to bring an action to avoid an allegedly fraudulent transfer. *See, In re*

*STN Enterprises*, 779 F.2d 901 (2d Cir.1985); *In re Commodore Int'l Ltd.*, 262 F.3d 96 (2d Cir.2001); *Housecraft*, 310 F.3d 64.   A creditor or committee may receive derivative standing from the bankruptcy court to pursue or maintain a fraudulent conveyance action "only if: (1) the creditor has the consent of the trustee; and (2) the bankruptcy court finds that suit by the creditor (a) is in the best interest of the bankruptcy estate, and (b) is necessary and beneficial to the fair and efficient resolution of the bankruptcy proceedings." *Milazzo*, 450 B.R. at 372 (citing *Commodore*, 262 F.3d at 100; *Housecraft*, 310 F.3d at 70).   Derivative standing in the Second Circuit requires that the creditor seek the approval of the trustee.   *See, In re Adelphia Communications Corp.*, 544 F.3d 420, 424 (2d Cir. 2008); *In re Smart World Technologies, LLC*, 423 F.3d 166, 177 (2d Cir.2005); *Milazzo*, 450 B.R. at 372; *see also In re Metro. Elec. Mfg. Co.*, 295 B.R. 7, 13 (Bankr. E.D.N.Y. 2003) (denying creditor's application to maintain fraudulent conveyance actions against third parties, without the Trustee's supervision and participation). Derivative standing also requires that the creditor first seek and receive court approval. *In re AppliedTheory Corp.*, 493 F.3d 82, 86 (2d Cir. 2007).

Cases entertaining a request for derivative standing "are rare, and are rarely granted." *Metro. Elec.*, 295 B.R. at 12.   "Assignments of the trustee's unique statutory powers, if not carefully scrutinized and narrowly circumscribed, may too easily result in the improper delegation and dilution of the trustee's primary duty to marshal the debtor's property for the benefit of the estate, and to sue parties for recovery of all property available under state law."   *In re Greenberg*, 266 B.R. 45, 51 (Bankr.E.D.N.Y.2001) (citations and internal quotation marks omitted); *see also Adelphia*, 544 F.3d at 424 (2d

Cir. 2008) ("It remains [the trustee's] duty to wisely manage the estate's legal claims, and this duty is implicit in the [trustee's] role as the estate's only fiduciary.").

As the plaintiff here has not received the consent of the trustee, nor sought approval from the bankruptcy court for derivative standing, the plaintiff lacks standing to bring fraudulent conveyance claims. Counts Seven and Twelve are therefore dismissed with prejudice. To the extent Counts Seven and Twelve are alleged against Defendant Holthausen they are also dismissed.

State Law Claims Regarding the Exempt Property (Counts Eight, Ten and Eleven)

Count Eight asserts that Martin's purchase of an interest in the Westbrook Property and the purchase of the 2014 Honda Accord somehow constituted conversion or statutory theft in violation of Conn.Gen.Stat. § 52-564. Counts Ten and Eleven assert that the purchase of the Westbrook Property and the 2014 Honda Accord amount to a breach of the covenant of good faith and fair dealing and constitute an unjust enrichment for which a constructive trust should be imposed. However, as stated earlier, the two Honda Accords and the Westbrook Property became exempt property after no objection was filed before the deadline. A debtor's exempt property "is not liable during or after the case for any debt of the debtor that arose ... before the commencement of the case[.]" 11 U.S.C. § 522(c); *see Law*, 571 U.S. at 417-18; *Owen*, 500 U.S. at 308.

Furthermore, the Second Amended Complaint fails to allege sufficient facts to assert a plausible claim under any of these counts. Therefore, Counts Eight, Ten, and Eleven are dismissed with prejudice. To the extent Count Eight, Ten, and Eleven are alleged against Defendant Holthausen, they are also dismissed.

## Claim Adjudication (Count 3)

The Court will defer ruling on the Motion to Dismiss regarding Count Three which, along with Counts One and Two that are not subject to the Motion to Dismiss, relate to the value Labbadia's claim against Martin.  Martin disputes the value of the attorney's fees owed to Labbadia and asserts that that the damages alleged under the state law fraudulent misrepresentation theory are barred by the relevant statute of limitations.  *See, Fichera v. Mine Hill Corp.*, 207 Conn. 204, 212 (1988) (claim for fraudulent misrepresentation under Connecticut law is governed by a three-year statute of limitations); *see also Midland Funding, LLC v. Johnson*, 581 U. S. ___, 137 S. Ct. 1407, 1412 (2017) ("Section 502(b)(1) of the Code, for example, says that, if a "claim" is "unenforceable," it will be disallowed. It does not say that an "unenforceable" claim is not a "claim.").

Because this is a no-asset Chapter 7 case, the Court may determine the dischargeability issue without determining the value of Labbadia's unsecured claim.  *See, Leonard v. RDLG, LLC (In re Leonard)*, 644 Fed.Appx. 612, 620 (6th Cir. 2016) ("[A] bankruptcy court may answer the nondischargeability question without deciding the value of the claim."); *In re Bumann*, 147 B.R. 44, 45 (Bankr.D.N.D.1992) (court declines to fix amount of claim in a dischargeability proceeding).  Further, if the debts to Labbadia are deemed dischargeable, the Court need not determine the amount of Labbadia's unsecured claim against Martin because there are no assets to distribute to unsecured creditors.  *See, generally, In re Shuman*, 277 B.R. 638, 650–51 (Bankr. E.D. Pa. 2001) (In a no-asset Chapter 7 case—which means that no assets will be distributed to unsecured creditors—"there is no reason to hear a challenge to a creditor's unsecured

proof of claim, even if raised by the debtor, since the allowance of the claim is irrelevant to the administration of the case)*; In re Littman*, 561 B.R. 79, 90 (Bankr. N.D. Ill. 2016) (abstaining from claims resolution in a no-asset Chapter 7 case); *see also* 28 U.S.C. § 1367(c)(3) ("courts may decline to exercise supplemental jurisdiction over a claim under subsection [if the] court has dismissed all claims over which it has original jurisdiction."); *Matter of Gober*, 100 F.3d 1195, 1206 (5th Cir. 1996) ("courts have broad discretion to abstain from hearing state law claims whenever appropriate").  The Court will therefore defer ruling on the Motion to Dismiss the claim adjudication issues until a determination has been made regarding discharge and dischargeability.

## VII.   <u>CONCLUSION</u>

I have considered all the plaintiff's other arguments made in his written submissions and during the Hearing and find them unpersuasive.  Therefore, for all the foregoing reasons, the adversary proceeding is dismissed in part.  Specifically, the Motion to Dismiss is denied in regards to the § 727(a)(4)(A) allegation in Count Four, and the § 523(a)(2)(A) allegation in Count Five to the extent that damages are claimed after the alleged fraudulent statement.  The Motion to Dismiss is deferred with regards to the state law fraudulent misrepresentation claim in Count Three.

**ACCORDINGLY,** it is hereby

**ORDERED:** That, the Motion to Amend the Complaint is GRANTED; and it is further

**ORDERED:** That, the Motion to Dismiss is GRANTED, in part, and DENIED in part; and it is further

33

**ORDERED:** That, Counts Six, Seven, Eight, Nine, Ten, Eleven, and Twelve are DISMISSED with prejudice; and it is further

**ORDERED:** That, Count Four is dismissed in part, with prejudice, except to the extent that it objects to discharge pursuant to § 727(a)(4)(A); and it is further

**ORDERED:** That, Count Five is dismissed in part, with prejudice, except to the extent that it objects to dischargeability pursuant to § 523(a)(2)(A) for damages incurred after the alleged false statement made in or around January 2014; and it is further

**ORDERED:** That, no action is being taken at this time with regards to Counts One, Two, or Three; and it is further

**ORDERED:** That, Defendant Thomas W. Holthausen is DISMISSED from this Adversary Proceeding.

Dated on August 2, 2019, at New Haven, Connecticut.



Ann M. Nevins
United States Bankruptcy Judge
District of Connecticut