UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
NEW HAVEN DIVISION

| | | |
|---|---|---|
| In re: | : | Case No.: 18-31636 (AMN) |
| BRADFORD J. MARTIN, | : | Chapter 7 |
| *Debtor* | : | |
| | : | |
| | : | |
| PAT LABBADIA, III, | : | Adv. Pro. No. 19-3001 (AMN) |
| D/B/A LAW OFFICE OF | : | |
| PAT LABBADIA | : | |
| *Plaintiff* | : | |
| v. | : | |
| BRADFORD J. MARTIN, | : | |
| *Defendant* | : | Re:  AP-ECF Nos. 30, 155[1] |

<u>**MEMORANDUM OF DECISION AFTER TRIAL**</u>

**APPEARANCES**

Pat Labbadia, III, Esq.                                      *Plaintiff Proceeding Pro se* [2]
d/b/a Law Office of Pat Labbadia
63 West Main Street
P.O. Box 365
Clinton, CT 06413

Patrick W. Boatman, Esq.                                  *Counsel for the Defendant*
Jenna N. Sternberg, Esq.
Law Offices of Patrick W. Boatman, LLC
111 Founders Plaza, Suite 1000
East Hartford, CT 06108

---

[1]      Citations to the docket of this adversary proceeding are noted by "AP-ECF No." Citations to the docket in Case No. 18-31636 are noted by "ECF No."

[2]      The plaintiff here, "Pat Labbadia, III, doing business as the Law Office of Pat Labbadia," is referenced in this Memorandum as "plaintiff" or "Attorney Labbadia." Although the plaintiff is proceeding as a *pro se* litigant in this adversary proceeding, Attorney Labbadia is not otherwise entitled to the "special solicitude" afforded to *pro se* laypersons given his status as an attorney.  *See, Williams v. Foley*, No. 3:15-CV-1324 (MPS), 2016 WL 4497746, at *1 (D. Conn. Aug. 25, 2016), *aff'd sub nom. Williams v. Riley*, 698 F. App'x 13 (2d Cir. 2017) (*citing Parent v. New York*, 485 Fed.Appx. 500, 502–03 (2d Cir. 2012)).

## I.    __INTRODUCTION__

Before the court is the plaintiff's[3] complaint seeking a determination that a debt the debtor owes him is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), and, more broadly, seeking a denial of the debtor's Chapter 7 discharge pursuant to 11 U.S.C. § 727(a)(4)(A).[4]   This dispute arose when Bradford J. Martin ("Mr. Martin", the "Debtor" or the "Defendant") failed to pay the attorney's fees owed for the plaintiff's work on his behalf during divorce proceedings and through a trial.   Prior to the start of the divorce trial when substantial fees were already owed, the defendant promised he would pay the plaintiff in two installments:  (1) $10,000.00 soon thereafter; and, (2) the balance of the fees at an eventual closing of the sale of the marital residence.   When the divorce was concluded and the house sold, the defendant refused to use the sale proceeds to pay the plaintiff, and the plaintiff sued him in state court.   The defendant then filed the Chapter 7 bankruptcy case underlying this adversary proceeding.

## II.    __JURISDICTION AND VENUE__

The United States District Court for the District of Connecticut has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b).   The Bankruptcy Court, in turn, has jurisdiction to hear and determine this matter pursuant to 28 U.S.C. § 157(a) and the Order of Reference of the District Court dated September 21, 1984.   This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(I) and (J).   This Court has jurisdiction over core proceedings pursuant to 28 U.S.C. §§ 157(b)(1) and 1334, and, may hear and enter a final order in this matter subject to traditional appeal rights.

---

[3]     *See,* footnote 2.
[4]     Title 11, United States Code, is the "Bankruptcy Code."   References to statutory sections are to the Bankruptcy Code unless otherwise specified.

This adversary proceeding arises under the defendant's Chapter 7 case pending in this District and venue is proper pursuant to 28 U.S.C. § 1409.  The plaintiff's standing stems from his status as a creditor in the Chapter 7 case, and he may object to both the granting of a discharge pursuant to § 727(c)(1) and the dischargeability of a debt pursuant to Fed.R.Bankr.P. 4007(a).  This memorandum shall serve as the court's findings of facts and conclusions of law pursuant to Fed.R.Civ.P. 52, made applicable here through Fed.R.Bankr.P. 7052.

### III.   <u>PROCEDURAL HISTORY</u>

The court assumes familiarity with the procedural history of the Defendant's Chapter 7 case, case number 18-31636, and this adversary proceeding as set forth in the court's earlier Ruling and Memorandum of Decision Granting the Motion to Amend Complaint and Granting the Motion to Dismiss Complaint, in Part (the "Partial Dismissal Decision").  AP-ECF No. 81.

When this adversary proceeding commenced on January 8, 2019, the plaintiff's primary protest was that the defendant, Mr. Martin used the proceeds from the sale of his former marital residence to purchase an interest in real property he used as a residence when he filed the Chapter 7 case, rather than to pay the plaintiff's claim.  The plaintiff complained that the defendant's apparent conversion of non-exempt property to exempt property on the eve of bankruptcy was a scheme designed to place the funds beyond the plaintiff's reach.  Because the plaintiff did not timely object to the defendant's homestead exemption, any claims asserted on this basis were dismissed as more fully set forth in the Partial Dismissal Decision.   AP-ECF No. 81.[5]  Besides the deferment of Counts One

---

[5]      The Partial Dismissal Decision dismissed Counts Six, Seven, Eight, Nine, Ten, Eleven, and Twelve of the Complaint against the defendant here, deferred decision regarding Counts One, Two, and Three, and dismissed Thomas W. Holthausen as a defendant to this adversary proceeding.  AP-ECF No. 81.

through Three, all that remained of the plaintiff's Second Amended Complaint (the

"Complaint") after the Partial Dismissal Decision were portions of Counts Four and Five.

Those remaining claims included:

> a. Count Four, only to the extent it seeks to deny the defendant a discharge for making a false oath on his bankruptcy petition claiming he paid $500.00 in rent pursuant to 11 U.S.C. § 727(a)(4)(A); and
>
> b. Count Five, only to the extent it seeks a determination that a debt owed to the plaintiff for attorney's fees is non-dischargeable because the fees were incurred after the defendant falsely promised, prior to the start of his divorce trial, he would pay the fees owed in full when the marital home was sold pursuant to 11 U.S.C. § 523(a)(2)(A).

AP-ECF No. 81.

A trial on the two remaining counts proceeded on December 16, 2019 and

December 19, 2019. On the morning of December 16, 2019, the plaintiff moved to amend

his complaint to add an allegation that the defendant had falsely stated on his Statement

of Financial Affairs he paid his counsel, Attorney Patrick Boatman, Three Thousand Three

Hundred and Thirty-five ($3,335.00) Dollars, when – as later revealed -- he had paid a

total of Six Thousand ($6,000.00) Dollars for services that included filing bankruptcy and

purchasing property in Westbrook, Connecticut. AP-ECF Nos. 134, 135. However, the

plaintiff mistakenly attached an amendment that failed to contain his intended revisions

and I denied the motion but allowed plaintiff to present evidence regarding Attorney

Boatman's fees, if he so chose. AP-ECF No. 138 at 00:04:15 – 00:10:28[6]; AP-ECF No.

136. During trial, I reserved decision regarding plaintiff's Exhibits 2T and 2S. AP-ECF

No. 141 at 00:42:52 – 01:00:20. Following trial, both parties submitted post-trial briefs.

*See*, AP-ECF Nos. 154, 157, 162.

---

[6]   Citations to the audio recording of the trial reference the relevant PDF attachment on the docket of the adversary proceeding, and then reference hours:minutes:seconds of the recording, as AP-ECF No. at 00:00:00.

On January 31, 2020, the same day as the filing of his post-trial brief, the plaintiff filed another motion seeking to amend his Complaint to add the allegation regarding the amounts paid to Attorney Boatman.  AP-ECF No. 156.  Specifically, the plaintiff amended paragraph numbers 26 and 54(c) alleging the defendant should be denied a discharge pursuant to 11 U.S.C. § 727(a)(4) because there was a discrepancy between the defendant's disclosure that he paid $3,335.00 to Attorney Boatman in his Statement of Financial Affairs versus his deposition testimony that he paid a total of $6,000.00.  AP-ECF No. 155-2, p. 5.  The defendant objected on the basis that any amendment would be futile.  *See*, AP-ECF No. 158.

## IV.    **FINDINGS OF FACT**

In accordance with Fed.R.Civ.P. 52 and Fed.R.Bankr.P. 7052, after review and analysis of the trial testimony, the documents admitted into evidence, and examination of the official record of the bankruptcy case and the instant adversary proceeding, I find the following facts:

1. On October 1, 2018 (the "Petition Date"), the defendant commenced the Chapter 7 case by filing a voluntary Chapter 7 petition.  ECF No. 1.

2. On the Petition Date, the defendant resided at 21 Salt Island Road, Westbrook, Connecticut ("Westbrook Property").  AP-ECF No. 30, 80, ¶ 2.  At that time, he held a one-quarter interest in the title to the Westbrook Property.

3. Until approximately October of 2013, Mr. Martin resided with his wife at a home in Guilford, Connecticut (the "marital residence"), which he and his wife owned jointly.  AP-ECF No. 138 at 01:01:15 – 1:01:40; AP-ECF No. 142 at 02:54:11 – 02:54:18.

4. After twenty-seven years of marriage, Mr. Martin consulted with his close friend, Gerald Ryan ("Attorney Ryan"), an attorney who had assisted Mr. Martin with

various civil matters over the years, about getting a divorce from his wife.  AP-ECF No. 142 at 02:54:40 – 02:56:02.  Attorney Ryan referred Mr. Martin to the plaintiff. AP-ECF No. 142 at 02:56:07 - 02:56:50.

5.  Pasquale (referred to as "Pat") Labbadia is a licensed attorney operating a solo practice doing business as The Law Office of Pat Labbadia.  AP-ECF No. 141 at 01:29:06 – 01:31:28.  During all relevant times, the plaintiff's wife, Mary Labbadia, worked full time as a paralegal and secretary in the plaintiff's office.  AP-ECF No. 139 at 01:54:10 – 01:54:30.

6.  The defendant retained the plaintiff to represent him in his divorce and entered into a written retainer agreement for that representation.  AP-ECF No. 138 at 00:31:16 – 00:31:24; 00:41:15 – 00:41:32; AP-ECF No. 141 at 01:31:40 – 01:32:05.  The retainer agreement, dated July 19, 2011, called for a Five Thousand ($5,000.00) Dollar retainer and for the plaintiff to be compensated on an hourly basis.  Pl. Ex. 7; AP-ECF No. 138 at 00:39:31 – 00:41:15; AP-ECF No. 141 at 01:31:40 – 01:32:05.  In a series of payments, Mr. Martin paid the $5,000.00 retainer.  AP-ECF No. 138 at 00:40:35 - 00:40:42; AP-ECF No. 141 at 01:32:14 – 01:32:28.

7.  In July of 2013, the plaintiff presented Mr. Martin with an initial invoice totaling $9,920.00.  Pl. Ex. 8.  Mr. Martin paid the $9,920.00.  AP-ECF No. 138 at 01:00:14 – 01:00:30.

8.  At some point in October 2013, Mr. Martin moved out of the marital residence and into the Westbrook Property, which at that time was owned solely by the defendant's close friend, Thomas Holthausen.  The defendant paid rent of $500.00 a month in exchange for residing at the Westbrook Property.  AP-ECF No. 30, ¶¶ 20 - 24, AP-ECF No. 88, ¶¶ 20-24, Pl. Ex. 26, p. 21, L. 12-16.

### *Divorce Trial and The Promise of Payment*

9.  While Mr. Martin could not recall specific details, it was undisputed that the divorce case[7] was contested and the divorce trial was delayed on multiple occasions for various reasons, none of which are relevant to the issues before this court.

10. The defendant was frustrated by the length of time it was taking to complete the divorce case and its growing expense, and, at one point considered proceeding *pro se.* However, the plaintiff persuaded him it was in his best interests to continue having the plaintiff represent him.  AP-ECF No. 138 at 01:48:10 – 01:48:25; AP-ECF No. 142 at 00:37:50 – 00:40:10.

11. After many delays, the divorce trial was held over two days on January 7, 2014 and January 8, 2014.  AP-ECF No. 138 at 00:52:45 – 00:53:00; 01:44:01 – 01:44:20.

12. As part of her responsibilities in the plaintiff's office, Mary Labbadia assisted in preparing financial affidavits, including computing the amount of attorney's fees owed to the plaintiff.  AP-ECF No. 139 at 01:58:40 – 01:59:38.

13. Prior to the start of his divorce trial, the defendant executed a financial affidavit ("January 2014 Financial Affidavit") reflecting a balance of $26,463.98 owed to the plaintiff for attorney's fees.  Pl. Ex. 16; Pl. Ex. 6 - Q. and A. 28.  This amount was in addition to the $5,000.00 retainer paid in 2011 and the $9,920.00 paid in 2013.  AP-ECF No. 138 at 01:45:00 – 01:46:50; 01:50:45 – 01:50:56.

14. Mary Labbadia recalled the defendant appeared to be upset with the amount of the attorney's fees – but not with the plaintiff's services – when presented with the January 2014 Financial Affidavit.  AP-ECF No. 139 at 02:07:18 – 02:11:11.

---

[7]    *Bradford Martin v. Celeste Martin*, docket number: NNH-FA11-4049399-S.

15. The January 2014 Financial Affidavit revealed the defendant did not have enough cash or other liquid assets to pay the outstanding attorney's fees.  Pl. Ex. 16.[8]

16.  The defendant proposed paying $10,000.00 toward the balance owed and then paying the balance at the closing of the sale of the marital residence.  AP-ECF No. 138 at 01:46:20 - 01:47:32; AP-ECF No. 139 at 02:12:07 – 02:13:10; AP-ECF No. 142 at 03:05:05 – 03:05:25.

17. The plaintiff agreed to the deferred payment proposal based upon the plaintiff's understanding he would be paid at the closing of the marital residence.  AP-ECF No. 142 at 00:37:14 – 00:38:30; 02:34:00 – 02:34:57.   The plaintiff believed he would be paid at the closing in the same manner that a mortgage or lien on the marital residence would be paid at a real estate closing.  AP-ECF No. 142 at 00:44:45 – 00:45:15.

18. No mortgage or other lien was recorded against the marital residence, and no writing setting forth the terms and conditions of the deferred payment arrangement was offered into evidence.  AP-ECF No. 142 at 00:44:50 – 00:49:30.

19. In order to pay the promised $10,000.00, the defendant withdrew money from his individual retirement account and on January 23, 2014 – soon after the divorce trial had taken place – delivered a check for $10,000.00 to the plaintiff as partial payment of the outstanding legal fees.  AP-ECF No. 139 at 02:14:23 - 02:15:35; AP-ECF No. 142 at 01:14:58 – 01:15:15; 02:31:00 – 02:32:45; 03:02:56 – 03:03:25.

---

[8]      The January 2014 Financial Affidavit reflected assets including minimal cash, and, other assets having the following approximate values: retirement accounts of $115,000, stocks valued at $4,055, vehicles valued at $13,700, equity in real property in Vermont valued at $15,000, and, equity in a marital residence owned jointly with his wife valued at $215,773.00.  Pl. Ex. 16.

20. Following the defendant's promise and payment of $10,000.00, it is undisputed that the plaintiff continued to provide legal services in connection with the divorce case.

21. The divorce trial eventually ended without a judge entering a verdict, due to the judge's decision to recuse himself.  AP-ECF No. 154, p.2.  Rather than face a mistrial and start all over again, or, face a new trial after a very long hiatus, the parties [in the divorce action] eventually reached an agreement to resolve the dissolution of marriage proceeding after settlement discussions took place with the assistance of a judge.  AP-ECF No. 154, p.2.

22. On May 5, 2014, the defendant signed another financial affidavit ("May Financial Affidavit"), reflecting attorney's fees totaling $43,134.38 were owed to the plaintiff. Pl. Ex. 20.

23. A judgment of divorce entered on May 5, 2014.  AP-ECF No. 142 at 00:44:47-00:44:54.

### *Mr. Martin's Changed Intent to Pay Plaintiff and the Sale of the Marital Residence*

24. After the divorce was finalized but prior to the closing, the defendant's long-time friend, Attorney Ryan, suggested he speak with another family law/divorce lawyer, Attorney James Flaherty ("Attorney Flaherty") regarding the fees owed to the plaintiff.  AP-ECF No. 138 at 01:34:53 – 01:38:50, 02:11:49 – 02:13:00; Pl. Ex. 26, p. 38, L. 1-10.

25. On or about June 6, 2014, after conferring with Attorney Flaherty, the defendant decided not to pay the fees due the plaintiff at the closing.  AP-ECF No. 142 at 03:19:12 – 03:21:03.

26. The defendant testified repeatedly that prior to his consultation with Attorney Flaherty he had intended to pay the plaintiff the fees owed. AP-ECF No. 142 at 03:17:50 – 03:18:20; Def. Ex. 9.

Q:   And Mr. Martin, isn't it true that you never intended to pay me out of the sale of the home?

A:   That's not true.
AP-ECF No. 138 at 01:51:01 – 01:51:17.

Q:   I asked you before the break if it was ever your intention to pay me the balance and you said that that was not true that you did intend to pay me, so when did that change Mr. Martin?

A:   That would have changed after I spoke with Attorney Flaherty.
AP-ECF No. 138 at 02:01:30 – 02:02:00.

27. The closing on the marital residence took place on or about June 13, 2014. AP-ECF No. 138 at 01:52:04 – 01:52:52; Pl. Ex. 2Y, HUD-1 Statement.

28. The plaintiff was not informed of the date and the time of the closing and did not receive any payment from the closing. AP-ECF No. 142 at 00:45:10 – 00:45:25; 00:49:54 – 00:50:20. The defendant did not communicate to the plaintiff he had changed his mind and would not be paying the attorney's fees owed at the closing. AP-ECF No. 142 at 01:10:30 – 01:10:55.

Q:   When the house was sold you did not pay the balance that was owed to me?

A:   I did not.
AP-ECF No. 138 at 01:51:01 – 01:51:17.

C:   Why did you not tell [the plaintiff] that you had changed your mind prior to the closing being concluded?

A:   Because I think Attorney Flaherty told me to not to say anything, don't do anything, and when this is all over, I will represent you.
AP-ECF No. 138 at 02:12:54 - 02:13:37.

29. The defendant received in excess of $100,000.00 from sale of the marital home in June 2014.  AP-ECF No. 138 at 02:17:40 - 02:17:45.

30. On June 13, 2014, upon learning he would not be paid at the closing of the marital residence, the plaintiff initiated a state court lawsuit against Mr. Martin.  *See*, State of Connecticut Superior Court case: *Pat Labbadia III, d/b/a Law Office of Pat Labbadia v. Bradford J. Martin*, docket number: NNH-CV-14-5034899-S (the "State Court Litigation").[9]

### *Mr. Martin's Chapter 7 Petition and Bankruptcy Schedules; Rent and Purchase of Interest in Westbrook Property*

31. The Petition Date for the Chapter 7 bankruptcy case, October 1, 2018, occurred prior to the conclusion of the State Court Litigation.  Pl. Ex. 31, Copy of the Voluntary Chapter 7 Petition (the "Petition"), case number 18-31636, ECF No. 1.

32. On Bankruptcy Schedule A/B – Property, the defendant identified that he owned a one-quarter interest in the Westbrook Property, valued at approximately $58,750.00.  Pl. Ex. 31, Schedule A/B, Question 1.1.  On Bankruptcy Schedule C – The Property You Claim as Exempt, the defendant claimed an exemption pursuant to state statute of the entire value of his interest in the Westbrook Property.  Pl. Ex. 31, Schedule C, Question 2.

33. In response to Question 18 on the Statement of Financial Affairs, the defendant disclosed he had transferred $60,000.00 to Thomas Holthausen on September 18, 2018 (a few weeks before the Petition Date) in exchange for the one-quarter interest in the Westbrook Property.  Pl. Ex. 31, Statement of Financial Affairs,

---

[9]     I take judicial notice of the State Court Litigation pursuant to Fed.R.Evid. 201 and note that the docket for the State Court Litigation is available publicly at: http://civilinquiry.jud.ct.gov/.

Question 18; AP-ECF No. 30, ¶ 27, AP-ECF No. 88, ¶ 27; AP-ECF No. 141 at 00:14:23 - 00:16:25.

34. Despite these disclosures about owning an interest in the Westbrook Property, the defendant responded affirmatively that he rented his residence in response to Question 11 on his Petition.  Pl. Ex. 31, Voluntary Petition, Question 11.

35. The defendant acknowledged his response to Question 11 regarding renting his residence was in error as of the Petition Date.

Q:     Do you see question number 11?

A:     Yes.

Q:     And it says "do you rent your residence," do you see that?

A:     Yes.

Q:     And do you see the answer?

A:     Yes.

Q:     And the answer was yes, correct?

A:     That's what it says here.

Q:     Was that a true statement, Mr. Martin?

A:     Well as I said before, I did rent up until October 1st when I purchased the portion of the house.

Q:     Until when?

A:     I think, believe it was…well maybe it was in September yeah, September, when the closing on the house was, maybe September, so I wasn't paying rent then.

Q:     So that statement that you paid rent is false, is that correct?

A:     Well, I would say it was an oversight on my part. I wasn't trying to deceive you.

Q:     That wasn't the question, the question is it was false on that date when you filed.

A:      I wasn't paying rent on this, yes.
AP-ECF No. 139 at 00:33:50 – 00:35:05.

36. The defendant testified in response to questioning before the Chapter 7 Trustee during the § 341 Meeting of Creditors that he purchased the one-quarter interest in the Westbrook Property as an investment and as a place to live.  Pl. Ex. 26, § 341 Meeting Transcript, p. 14, L. 11-16; p. 36, L. 7-12.   When the plaintiff questioned him during the § 341 Meeting, the defendant further clarified that at the time he purchased the interest in the Westbrook Property, he had already been residing at the Property since October of 2013.  Pl. Ex. 26, p. 22, L. 7-17.

37. In response to questioning by the Chapter 7 Trustee at the § 341 Meeting, the defendant disclosed he had paid rent to Thomas Holthausen prior to his purchase of the interest in the Westbrook Property.  Pl. Ex. 26, p. 14, L. 17-25; p. 37, L. 10-18.

### ***Attorney's Fees Paid Prior to the Petition Date***

38. Around June of 2018, the defendant consulted with his current counsel, Attorney Patrick Boatman ("Attorney Boatman").  Pl. Ex. 26, p. 29, L. 2-4.

39. In response to question 16 on the Statement of Financial Affairs, the defendant indicated that within the year prior to the Petition Date he paid $3,335.00 to Attorney Boatman for consulting about bankruptcy and preparing a bankruptcy petition.[10]  Pl. Ex. 31, p. 31, Question 16.   The defendant believed he made this payment on or about May 1, 2018.  AP-ECF No. 139 at 00:37:53 – 00:40:09.

---

[10]      As required by Fed.R.Bankr.P. 2016(b), Attorney Boatman filed a disclosure of compensation form known as Official Form 2030, disclosing he received and agreed to accept $3,335.00 as compensation for services rendered or to be rendered in connection with this bankruptcy case.  Pl. Ex. 31, p. 41.

40. During trial, the defendant acknowledged he paid Attorney Boatman a total of $6,000.00 in the year prior to the Petition Date, which included the $3,335.00 for bankruptcy. AP-ECF No. 139 at 00:40:18 – 00:41:18. The remaining portion of the $6,000.00 was paid for services Attorney Boatman provided related to the defendant's purchase of an interest in the Westbrook Property. AP-ECF No. 139 at 00:40:18 – 00:41:18.

41. The defendant did not include the amounts paid to Attorney Boatman related to the purchase of the interest in the Westbrook Property in response to question 16 on the Statement of Financial Affairs. AP-ECF No. 139 at 00:41:24 – 00:41:49.

42. During trial, defendant testified he paid the $6,000.00 to Attorney Boatman over a period of time, but during his deposition the defendant stated he paid Attorney Boatman "upfront" or at the start of the representation. AP-ECF No. 139 at 01:08:20 – 01:11:56.

43. The plaintiff believed Attorney Boatman and the defendant engaged in a fraudulent scheme to hinder and delay the recovery of the attorney's fees due by, among other things, converting non-exempt cash into an interest in property that qualified as a homestead exemption. As a result, the plaintiff believed all the fees paid to Attorney Boatman were paid in connection with bankruptcy and should have been disclosed on the Statement of Financial Affairs. AP-ECF No. 139 at 00:43:02 – 00:45:52; AP-ECF No. 01:12:15 – 01:14:20.

### *Sale of Vermont Property and College Tuition Payments*

44. During the § 341 Meeting of Creditors, the defendant testified he sold a piece of real estate located in Vermont approximately three years prior to the Petition Date. Pl. Ex. 26, p. 15, L. 10-18. He further stated he used the $10,000.00 of proceeds

14

he received to pay for his adult daughter's college tuition.  Pl. Ex. 26, p. 15, L. 19-22.

45. Following the § 341 Meeting, the Chapter 7 Trustee asked the defendant to provide information regarding when and how his daughter's tuition payments were paid, and, information about the sale of the Vermont real estate.  Pl. Ex. 26, p. 8, L. 6-12, p. 39, L. 23-25.

46. In response, the defendant provided the Trustee with a document identifying approximately five (5) tuition payments.  During trial, the plaintiff offered this document as plaintiff's Exhibit 2S.  The defendant objected based on relevance and I reserved decision as to its admission.

47. I also reserved decision on the admission of plaintiff's Exhibit 2T, a document providing information regarding the sale of the Vermont real estate.

48. On March 8, 2019, the Chapter 7 Trustee filed a Report of No Distribution, indicating her administration of the Chapter 7 case was concluded and no assets were available to distribute to unsecured creditors.  ECF No. 20.

## V.    APPLICABLE LAW

### 11 U.S.C. § 523(a)(2)(A)

"In Bankruptcy Code Section 523, Congress has identified certain circumstances where considerations of public policy, fairness, and equity may lead to a denial of the dischargeability of a particular debt."  *In re Dvorkin*, 19-41157-ESS, 2020 WL 930098, at *6 (Bankr. E.D.N.Y. Feb. 26, 2020).  In particular, § 523(a)(2)(A) excepts from discharge those debts arising from "false pretenses, a false representation, or actual fraud."  11 U.S.C. § 523(a)(2)(A).  While the three separate types of fraud contain somewhat different meanings, the Supreme Court "has historically construed the terms in § 523(a)(2)(A) to

contain the 'elements that the common law has defined them to include.'" *Husky Intern. Elecs., Inc. v. Ritz*, 136 S. Ct. 1581, 1586 (2016)(*quoting Field v. Mans*, 516 U.S. 59, 69 (1995)). The word "actual" in the context of common-law fraud has a simple meaning of fraud "done with wrongful intent" and requires scienter. *Ritz*, 136 S. Ct. at 1586. Thus, "[t]o be actionable under § 523(a)(2)(A), the debtor must act with scienter, regardless of whether the creditor alleges that the debtor's conduct constituted false pretense, a false representation or actual fraud." *In re Steinberg*, 16 CIV. 4074 (LGS), 2017 WL 1184314, at *4 (S.D.N.Y. Mar. 29, 2017).

Though the elements of each overlap, they are distinct. *Heritage Equities, LLC v. Newman (In re Newman)*, 588 B.R. 281, 296 (Bankr. D. Conn. 2018); *see also, In re Chase*, 372 B.R. 125, 128 (Bankr. S.D.N.Y. 2007)("causes of action for 'false pretenses' and 'false representations' … are two distinct actions; the former involves implied misrepresentations, while the latter deals with expressed, either oral or written, misrepresentations")(citations omitted). "As used in § 523(a)(2)(A), the term 'false pretenses' is defined as conscious[,] deceptive or misleading conduct calculated to obtain, or deprive, another of property and encompasses any scam, scheme, subterfuge, artifice, deceit, or chicanery in the accomplishment of an unlawful objective on behalf of the defendant." *In re Kedia*, 607 B.R. 101, 114 (Bankr. E.D.N.Y. 2019)(internal citations omitted). To establish a debt was incurred by "false pretenses" a plaintiff must prove "(1) an implied misrepresentation or conduct by the defendant[ ]; (2) promoted knowingly and willingly by the defendant[ ]; (3) creating a contrived and misleading understanding of the transaction on the part of the plaintiff[ ]; (4) which wrongfully induced the plaintiff[ ] to advance money, property, or credit to the defendant." *Yuqing Wang aka Henry Wang v.*

*Youmin Guo (In re Guo)*, 548 B.R. 396, 401 (Bankr. E.D.N.Y. 2016) (*quoting Voyatzoglou v. Hambley (In re Hambley)*, 329 B.R. 382, 396 (Bankr. E.D.N.Y 2005)).

To establish a debt was incurred by a "false representation" a plaintiff must establish: 1) "[t]he debtor made a false representation; [2)] [a]t the time the representation was made, the debtor knew it was false; [3)] [t]he debtor made the representation with intent to deceive the creditor; [4)] [t]he creditor justifiably relied on the representation; and [5)] [t]he creditor sustained loss or damage as a proximate consequence of the false representation." *In re Deutsch*, 575 B.R. 590, 599 (Bankr. S.D.N.Y. 2017). "[U]nder section 523(a)(2)(A)(ii), a debtor's 'intent to deceive' need not be express, as 'intent may be inferred when the totality of the circumstances presents a picture of deceptive conduct by the debtor, which indicates that [he] did intend to deceive and cheat the [creditor].'" *In re Deutsch*, 575 B.R. at 600. Section 523(a)(2)(A) explicitly limits "nondischargeable debts to the loss suffered as the proximate result of the misrepresentation." *Fellows, Read and Assocs., Inc. v. Rieder*, 116 F.3d 465 (2d Cir. 1997)(unpublished)(*citing American Express Travel Related Servs. Co. v. Hashemi (In re Hashemi)*, 104 F.3d 1122, 1125 (9th Cir.1997)). There is an "inherent sequential order of the elements of fraud … the misrepresentation must come first, the reliance second and the damage last." *In re Rieder*, 178 B.R. 373, 380 (Bankr. S.D.N.Y. 1995), *aff'd, sub nom.*, 194 B.R. 734 (S.D.N.Y. 1996), *aff'd, Fellows, Read and Associates, Inc. v. Rieder*, 116 F.3d 465 (2d Cir. 1997)(Summary Order).

"[A] promise to be performed in the future is not sufficient to make a debt nondischargeable, even though there is no excuse for the subsequent breach." *In re Christodoulakis*, 16-73610-AST, 2019 WL 360064, at *8 (Bankr. E.D.N.Y. Jan. 25, 2019)(*quoting Messmer v. Fenti (In re Fenti)*, No. 94-5025, 1994 WL 16167976, at *2 (2d

Cir. Oct. 4, 1994)); *see also, DeBrizzi v. Dwyer (In re Dwyer)*, No. 06-50358-AHWS, 2010 WL 419408, at *3 (Bankr. D. Conn. Jan. 29, 2010); *Gomez-Cuevas v. Barrios (In re Barrios)*, No. 06-11852-brl, 2007 WL 2406881, at *3 (Bankr. S.D.N.Y. Aug. 20, 2007). "[A] [d]ebtor's mere promise to repay the [debt] and later failure to do so is insufficient as a matter of law to state a § 523(a)(2)(A) claim for false representation." *In re Christodoulakis*, 16-73610-AST, 2019 WL 360064, at *8.

Under 11 U.S.C. § 523(a), the plaintiff's burden is to prove all elements of each asserted claim for relief by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 286–87 (1991).

### *11 U.S.C. § 727(a)(4)(A)*

A central purpose of the Bankruptcy Code and the discharge provided in § 727, "is to allow the 'honest but unfortunate debtor' to begin a new life free from debt." *D.A.N. Joint Venture v. Cacioli (In re Cacioli)*, 463 F.3d 229, 234 (2d Cir. 2006)(*quoting Grogan v. Garner*, 498 U.S. 279, 286-87 (1991)).  For the protection of creditors, however, § 727 of the Bankruptcy Code requires a denial of a discharge in certain circumstances. Because "§ 727 imposes an extreme penalty for wrongdoing[,]" the Second Circuit Court of Appeals instructs "that [§ 727] must be construed strictly against those who object to the debtor's discharge and 'liberally in favor of the bankrupt.'" *State Bank of India v. Chalasani (In re Chalasani)*, 92 F.3d 1300, 1310 (2d Cir. 1996).  "When a creditor or trustee challenges a debtor's discharge, the standard of proof is the preponderance of the evidence and the burden of persuasion lies with the creditor." *Gordon v. Tese-Milner (In re Gordon)*, 535 B.R. 531, 536 (S.D.N.Y. 2015).

Section 727(a)(4)(A) provides in relevant part, that the court shall grant the debtor a discharge, unless –, "the debtor knowingly and fraudulently, or in connection with the

case ... made a false oath or account." 11 U.S.C. § 727(a)(4)(A). To deny a debtor a discharge under § 727(a)(4)(A), the party objecting to a discharge must prove: "(1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew that the statement was false; (4) the debtor made the statement with intent to deceive; and (5) the statement related materially to the bankruptcy case." *In re Masih*, 16-42973-NHL, 2019 WL 1494550, at *8 (Bankr. E.D.N.Y. Mar. 31, 2019); *see also*, *In re Boyer*, 328 F. App'x 711, 715 (2d Cir. 2009) (Summary Order). Testimony at a § 341 meeting, as well as the debtor's bankruptcy petition, schedules and related statements, all qualify as statements under oath for purposes of § 727(a)(4)(A). *See, Mazer-Marino v. Levi (In re Levi)*, 581 B.R. 733, 746 (Bankr. S.D.N.Y. 2017); *In re Gonzalez*, 553 B.R. 467, 473–74 (Bankr. E.D.N.Y. 2016).

A false statement must materially relate to the administration of a debtor's bankruptcy in order to support the denial of a discharge. *In re Gordon*, 535 B.R. at 538. "A false statement or omission is material if it 'bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of the debtor's property.'" *In re Levi*, 581 B.R. at 746 (*citing In re Gordon*, 535 B.R. at 538). "Omissions that do not affect the value of the estate may nevertheless be material if they hinder the trustee's or creditor's ability to investigate the debtor's pre-bankruptcy dealings and financial condition." *In re Gordon*, 535 B.R. at 538.

"[A] debtor will not be denied a discharge where the 'omission or error resulted from an inadvertent or honest mistake.'" *Mazer-Marino v. Schiltkamp (In re Schiltkamp)*, Docket Nos. 16-13037 (SMB), 18-01545 (SMB), 2019 Bankr. LEXIS 744, at *22 (Bankr. S.D.N.Y. Mar. 6, 2019)(internal citations omitted). "On the other hand, while ignorance or carelessness alone is not enough to establish fraudulent intent, 'multiple smaller

falsehoods can aggregate into a 'critical mass' that does indicate the requisite intent.'" *In re Schiltkamp*, 2019 Bankr. LEXIS 744, at \*22 (*citing In re Gordon*, 535 B.R. at 537).

"Once the moving party meets its initial burden to produce evidence of a false statement, the burden of production then shifts to the debtor to produce a credible explanation for making the false and fraudulent representations." *Gobindram v. Bank of India*, 538 B.R. 629, 638 (E.D.N.Y. 2015)(internal citations and quotations omitted).

### *Fed.R.Civ.P. 15 and Futile Amendments*

Fed.R.Civ.P. 15 provides the circumstances for when a party may amend its pleadings before and after trial. *See*, Fed.R.Civ.P. 15(a) and (b). "A [] court has broad discretion in determining whether to grant leave to amend" *Gurary v. Winehouse*, 235 F.3d 792, 801 (2d Cir. 2000), and "although Rule 15(a) provides that leave to amend generally should be "freely give[n] ... when justice so requires," a court may properly deny leave to amend in cases of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc.'" *Charter Commun., Inc. v. Loc. Union No. 3, Intl. Bhd. of Elec. Workers, AFL-CIO*, 338 F. Supp. 3d 242, 255 (S.D.N.Y. 2018)(internal citations omitted).

"Where it appears that granting leave to amend [would be futile or] is unlikely to be productive[,]... it is not an abuse of discretion to deny leave to amend." *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002)(*quoting Ruffolo v. Oppenheimer and Co.*, 987 F.2d 129, 131 (2d Cir. 1993)); *Selvam v. Experian Info. Sols., Inc.*, No. 13 Civ. 6078 (DLI) (JO), 2015 WL 1034891, at \*4 (E.D.N.Y. Mar. 10, 2015)(denying leave to amend because "[t]he [amended] complaint gives no indication that plaintiff has a colorable claim"). "An amendment to a pleading is futile if the proposed claim could not

withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Lucente*, 310 F.3d at 258 (citation omitted).

### VI.    **DISCUSSION**

#### a.    **Objection to Dischargeability Pursuant to 11 U.S.C. § 523(a)(2)(A)**

In the surviving portion of Count Five[11], the plaintiff seeks a determination that the attorney's fees owed by the defendant are non-dischargeable pursuant to § 523(a)(2)(A) because they were incurred after he falsely represented to the plaintiff, prior to the start of the divorce trial, he would pay the fees in full when the marital home was sold.[12] However, the plaintiff failed to prove by a preponderance of the evidence crucial elements of § 523(a)(2)(A).  In particular, the evidence does not support the contention that at the time the defendant made the oral promise to pay, he did so with the wrongful intent to deceive the plaintiff into representing him during the divorce trial knowing the promise was false.  *In re Deutsch*, 575 B.R. 590, 599 (Bankr. S.D.N.Y. 2017).

During trial, the defendant testified[13] that when he promised to pay two installments of attorney's fees to the plaintiff ($10,000.00 first, plus, proceeds from the sale of the marital residence later) his intent was to fulfill this promise.  AP-ECF No. 142 at 03:17:50 – 03:18:20.  The plaintiff contends the promise was false at the time it was made, relying on a change in the defendant's demeanor observed by the plaintiff and Mary Labbadia. In seeking to establish the defendant's scienter for making the allegedly false promise, plaintiff argues the defendant was upset with the delays in the divorce case and the rising

---

[11]     *See,* AP-ECF No. 81, the Partial Dismissal Decision.

[12]     The plaintiff fails to argue Mr. Martin engaged in false pretenses or actual fraud as used in § 523(a)(2)(A) so I will not address in detail those theories of recovery.  To the extent the plaintiff sought recovery under those theories, I considered the evidence and the record before me and conclude the plaintiff failed to meet his burden to establish the required elements for actual fraud or false pretenses by a preponderance of the evidence.  Therefore, relief under those theories must be denied.

[13]     The court found Mr. Martin's testimony regarding his frustration with the length of time, the cost of the divorce, and his intent to pay the plaintiff to be credible.

costs and thus, his demeanor was different than what it had been earlier in the divorce proceedings.  AP-ECF No. 154, P. 13.  However, the Plaintiff's evidence supporting this contention – essentially his own testimony and that of his wife – was unpersuasive regarding the defendant's alleged intent to deceive or fraudulent intent.  Their testimony essentially corroborated much that is not in dispute regarding the defendant's circumstances at the time the promise was made, on the eve of the divorce trial.

In contrast, there is persuasive evidence corroborating Mr. Martin's intent to fulfill his promise and that the promise was not false when made.  Acting consistently with his promise, Mr. Martin withdrew funds from his retirement accounts and paid the Plaintiff $10,000.00 about two weeks after making his promise.  AP-ECF No. 139 at 02:14:23 – 02:15:35; AP-ECF No. 142 at 01:14:58 – 01:15:15; 02:31:00 – 02:32:45; 03:02:56 – 03:03:25.  The defendant's conduct of paying a substantial portion of the outstanding fees in late January 2014 is consistent with an intent to keep the promise, and not an intent to deceive.  Moreover, unlike many cases finding a debtor's false promise to pay a creditor to have been undertaken with the intent to deceive required by § 524(a)(2)(A), here it is clear the defendant had the means to follow through on the promise.  The various financial statements assembled throughout the divorce proceedings by Mary Labbadia each demonstrated the defendant had assets with enough value (though not liquid) to pay the attorney's fees.

The evidence was also uncontradicted that the defendant intended to fulfill his promise once it was made in January of 2014 to approximately May of 2014, and, that he only changed his mind about paying the second installment from the proceeds of the house sale after speaking with another attorney, Attorney Flaherty.  AP-ECF No. 138 at 02:09:02 – 02:10:00.  No testimony was offered to contradict the defendant's testimony

22

that his intention to pay the attorney's fees from the closing proceeds developed over time.  Neither Attorney Flaherty nor Attorney Ryan testified so the court is left with only the defendant's version of his consultations with them over the relevant time period from January 2014 to June 2014.  By itself, the defendant's promise to pay the plaintiff and the later failure to do so is insufficient for purposes of § 523(a)(2)(A).  *In re Christodoulakis*, 16-73610-AST, 2019 WL 360064, at *8.

Simply put, the defendant's purported different demeanor at the time of uttering the promise is insufficient to carry the plaintiff's burden of proof when weighed against the combination of the defendant's uncontroverted testimony that he meant to keep the promise when he made it, the partial payment of $10,000.00 consistent with the promise, and, the defendant's financial statements prepared by the plaintiff's law office demonstrating the defendant's ability to keep the promise.  In light of the plaintiff's failure to prove by a preponderance of the evidence that the defendant knew the representation was false when made and that it was made with the intent to deceive,[14] I must conclude the plaintiff is not entitled to a determination that the claim is non-dischargeable due to false pretenses.

Accordingly, the Plaintiff's claim pursuant to § 523(a)(2)(A) is denied.

### b. Objection to Discharge Pursuant to 11 U.S.C. § 727(a)(4)

The plaintiff more broadly asserts the defendant should be denied his entire Chapter 7 discharge pursuant to § 727(a)(4) because he falsely reported on his Petition

---

[14]   An "[i]ntent to deceive may be inferred when the totality of the circumstances presents a picture of deceptive conduct by the debtor, which indicates that he did intend to deceive and cheat the creditor."  *In re Chase*, 372 B.R. 125, 129 (Bankr. S.D.N.Y. 2007) (*quoting Hong Kong Deposit & Guaranty Ltd. v. Shaheen (In re Shaheen)*, 111 B.R. 48, 53 (S.D.N.Y.1990)).  In *In re Chase*, the court found that the debtor made a false representation when he promised to pay the plaintiff from funds that he would receive upon his 62nd birthday as a distribution from a family trust when such family trust never existed.  *In re Chase*, 372 B.R. at 129.  Here, in contrast, the Plaintiff has failed to produce evidence of circumstances suggesting that Mr. Martin's promise was false when made.

that he rented his residence on the Petition Date.  Pl. Ex. 31, Voluntary Petition, Question 11.  During trial, the defendant admitted this statement was false as he had already purchased his interest in the Westbrook Property by the Petition Date.  AP-ECF No. 139 at 00:33:50 – 00:35:05.  The plaintiff further claims the defendant deceived the Chapter 7 Trustee during the § 341 Meeting when he stated he purchased the interest in the Westbrook Property so that he could have a place to live without also disclosing he was already living and paying rent there.  Pl. Ex. 26, § 341 Meeting Transcript, p. 14, L. 11-16; p. 22, L. 7-17; p. 36, L. 7-12.  It was not until later in the course of the § 341 Meeting, and after questioning from the plaintiff, that the defendant disclosed he was already residing at the Westbrook Property when he purchased his interest.

While the plaintiff established the first three elements of a § 727(a)(4)(A) claim,[15] he failed to prove by a preponderance of the evidence that the defendant made the statements with the intent to deceive or that the statements were material to the administration of the bankruptcy case.  *In re Masih*, 16-42973-NHL, 2019 WL 1494550, at *8 (Bankr. E.D.N.Y. Mar. 31, 2019); *see also, In re Boyer*, 328 F. App'x 711, 715 (2d Cir. 2009) (*Summary Order*).  The statement regarding renting versus owning his residence is immaterial because the statement did not conceal or impede investigation into the assets of the bankruptcy estate.  *In re Gordon*, 535 B.R. at 538.  In other parts of the defendant's Petition and Schedules, including Schedule A/B and the Statement of Financial Affairs, the defendant clearly disclosed his ownership interest in the Westbrook Property, and that he resided at the Westbrook Property.  Pl. Ex. 31.  Additionally, the defendant admitted during trial the falsity of the statement that he rented his residence on

---

[15]    Namely, the plaintiff established the defendant made a statement under oath, that was false and that he knew – or should have known – was false.  *In re Masih*, 16-42973-NHL, 2019 WL 1494550, at *8 (Bankr. E.D.N.Y. Mar. 31, 2019); *see also, In re Boyer*, 328 F. App'x 711, 715 (2d Cir. 2009) (*Summary Order*).

the Petition Date.  What is missing from the plaintiff's evidence is that the defendant intentionally reported that he rented his residence in an effort to deceive the Chapter 7 Trustee or his creditors, or, to hinder the investigation into his financial condition or the assets of the estate.

Similarly, the defendant's failure to explain to the Chapter 7 Trustee when she initially inquired about his purchase of an interest in the Westbrook Property that he was renting at the time of the purchase is immaterial.  There is a lack of evidence that the defendant's statement regarding where he lived at the time of its purchase would have impacted the Chapter 7 Trustee's administration of the case.  The plaintiff did not call the Chapter 7 Trustee as a witness during trial, and, like the statement on the Petition, failed to show the defendant made this statement with the intent to deceive or impede the investigation into the existence or disposition of his property.  *In re Levi*, 581 B.R. at 746 (*citing In re Gordon*, 535 B.R. at 538).  Even if the Chapter 7 Trustee was misled during the initial part of the § 341 Meeting, the fact the defendant was renting at the time of the purchase was disclosed by the close of the Meeting.  Additionally, the Chapter 7 Trustee filed a Report of No Distribution indicating she had fully administered the case and believed there were no assets of value to administer.  *See*, ECF No. 20.

While these statements may have supported the plaintiff's objection – which claim was dismissed – to the defendant's claim of a homestead exemption alleging he had engaged in a fraud by converting non-exempt proceeds from the sale of the marital home into an exempt interest, they are not sufficient to sustain a claim under § 727(a)(4).  Accordingly, due to the failure to prove by a preponderance of the evidence the materiality of the defendant's statements and his intent to deceive, the plaintiff's claim under § 727(a)(4) is denied.

## VII.    Plaintiff's Request to Amend Denied as Futile

The plaintiff seeks, post-trial, to amend his complaint to add an allegation that the defendant falsely stated on his Statement of Financial Affairs he paid $3,335.00 to Attorney Boatman, when he later testified at his deposition he had paid a total of $6,000.00 for services including his bankruptcy and his purchase of the interest in the Westbrook Property.[16]    AP-ECF Nos. 155, 156.    The plaintiff asserts this is enough to deny the defendant a Chapter 7 discharge pursuant to § 727(a)(4).    The defendant objected, arguing any amendment would be futile.    *See*, AP-ECF No. 158.    I agree any amendment would be futile.    Even if the amendment was allowed, the evidence elicited at trial failed to show the defendant's statement was false.

During trial, the defendant acknowledged he paid Attorney Boatman a total of $6,000.00 in the year prior to the Petition Date, including $3,335.00 for bankruptcy services.    AP-ECF No. 139 at 00:40:18 – 00:41:18.    Question 16 of the Statement of Financial Affairs asks:

> Within 1 year before you filed for bankruptcy, did you or anyone else acting on your behalf pay or transfer any property to anyone you consulted about seeking bankruptcy or preparing a bankruptcy petition?
> Pl. Ex. 31.

The defendant responded he paid $3,335.00 to Attorney Boatman on or about May 1, 2018.    Pl. Ex. 31, p. 31, Question 16; AP-ECF No. 139 at 00:37:53 – 00:40:09.    He further explained that he did not include in response to question 16 the amounts paid to Attorney Boatman for the purchase of an interest in the Westbrook Property because those services were not related to the filing of bankruptcy.    AP-ECF No. 139 at 00:40:18

---

[16]    As noted above, the plaintiff originally attempted to amend his Complaint on the morning of the trial but due to the amendment containing errors, I denied the amendment.    Nonetheless, the plaintiff presented evidence regarding the fees paid to Attorney Boatman.    AP-ECF No. 138 at 00:04:15 – 00:10:28; AP-ECF No. 136.

– 00:41:18; 00:41:24 – 00:41:49.  I find the defendant's testimony credible on this point and decline to adopt the plaintiff's expansive view that the entire $6,000.00 was required to be disclosed in response to question 16.  The language of question 16 limits the scope of the question to bankruptcy related services.  The defendant provided credible testimony that $3,335.00 was related to bankruptcy services, and the rest was not.  In contrast, the plaintiff failed to provide persuasive evidence suggesting the defendant's disclosure was false or made with an intent to deceive.[17]

Further, I find unpersuasive plaintiff's argument that the full $6,000.00 related to bankruptcy because the purchase of an interest in the Westbrook Property was part of a scheme by the defendant and Attorney Boatman to convert non-exempt assets into exempt assets.  There was no persuasive evidence produced at trial supporting such a scheme.

Because I am unpersuaded that the defendant's response to question 16 on his Statement of Financial Affairs and his later disclosure of paying a total of $6,000.00 suffices as a false oath pursuant to § 727(a)(4), the plaintiff's request to amend filed as AP-ECF No. 155 is denied as futile.  *See, Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243 (2d Cir. 2002).

### VIII.    College Tuition Payments and Sale of Vermont Property Irrelevant

The plaintiff also alleges in broad and conclusory terms that the defendant failed to disclose to the Chapter 7 Trustee he had paid over a year's worth of college tuition payments for his adult daughter and that this failure somehow amounts to a claim.  AP-ECF No. 154; AP-ECF No. 162, P. 23.  During trial, I reserved decision on the admission

---

[17]    The plaintiff also argues there is some importance to assign to the discrepancy between the defendant's statement during his deposition that he paid Attorney Boatman "upfront" versus his testimony at trial that he paid him over time.  AP-ECF No. 139 at 01:08:20 – 01:11:56; AP-ECF No. 139 at 01:08:20 – 01:11:56.  I am unpersuaded this discrepancy is relevant or suffices for a claim under § 727(a)(4).

of plaintiff's Exhibit 2S, a document identifying approximately five (5) tuition payments provided to the Trustee and plaintiff's Exhibit 2T, a document providing information regarding the sale of real estate located in Vermont.  The plaintiff's post-trial brief only briefly refers to these exhibits but fails to explain their connection or relevance to the plaintiff's § 727(a)(4) claims.  While the plaintiff barely explains the relevance of these Exhibits, I will admit Exhibits 2S and 2T.

Again, I note the Chapter 7 Trustee filed a Report of No Distribution on March 8, 2019, and she is certainly on notice of this adversary proceeding, giving rise to the inference that the Chapter 7 Trustee was not misled and the defendant provided sufficient documentation regarding his financial affairs.  ECF No. 20.  Even considering all the alleged misstatements collectively, I find they do not constitute a critical mass indicative of a fraudulent intent.  *See*, *In re Schiltkamp*, 2019 Bankr. LEXIS 744, at *22.  Whatever argument the plaintiff is implying (and that is unclear) regarding either the college tuition payments or the Vermont sale, I conclude it is without merit, not supported by credible evidence, and insufficient pursuant to § 727(a)(4).  Accordingly, the plaintiff's claims on this basis are denied.

### IX.    CONCLUSION

After careful consideration of the evidence, the record of the bankruptcy case and this instant adversary proceeding, and the parties' arguments, I conclude the plaintiff has failed to meet his burden of proof to establish by a preponderance of the evidence either that: (1) the defendant and debtor here, Mr. Martin, should be denied a discharge pursuant to § 727(a)(4); or, (2) the attorney's fees owed to the plaintiff, Attorney Labbadia should be determined to be non-dischargeable pursuant to § 523(a)(2)(A).  I have considered all other arguments raised by the plaintiff and conclude none are persuasive

or supported by the record.  Therefore, a separate judgment in this adversary proceeding in favor of the defendant shall enter.  Since the plaintiff's debt will be dischargeable, I need not consider Counts One, Two or Three of the Complaint seeking a determination of the amount of fees owed to the plaintiff.

 This is a final order subject to rights of appeal.  The time within which a party may file an appeal of a final order of the bankruptcy court is fourteen (14) days after it is entered on the docket.  *See*, Fed.R.Bankr.P. 8002(a)(1).

 Dated this 28th day of May, 2020, at New Haven, Connecticut.

*Ann M. Nevins*
United States Bankruptcy Judge
District of Connecticut